## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**Jaleelah Ahmed,**

    **Plaintiff,**　　　　　　　　　　　**Case No. _____**

**v.**　　　　　　　　　　　　　　　　**Hon. _____**

**School District of the City of Hamtramck,**
**Evan Major (personally and in his official capacity),**
**Salah Hadwan (personally and in his official capacity),**
**Moortadha Obaid (personally and in his official capacity),**
**Showcat Chowdhury (personally and in his official capacity),**
**Regan Watson (personally and in her official capacity), and the**
**Hamtramck Federation Teachers (AFL-CIO), Jointly and Severally,**

    **Defendants.**

**Robert A. Lusk (P38122)**
**EDUCATORS LEGAL SERVICES, PLLC**
**Attorney for Plaintiff**
**9070 Campbell Creek Dr.**
**Commerce Township, MI 48390**
_rlusk@educatorslegalservices.com_

## **COMPLAINT**

### **PARTIES, JURISDICTION, AND VENUE**

Plaintiff, Mrs. Jaleelah Ahmed, files this civil action against Defendants:

School District of the City of Hamtramck; the following members of the Board of

Education of the School District of the City of Hamtramck, Mr. Evan Major, Mr.

Salah Hadwan, Mr. Moortadha Obaid, Mr. Showcat Chowdhury, and Ms. Regan Watson; and, the Hamtramck Federation of Teachers, AFL-CIO.

1.      Plaintiff Jaleelah Ahmed is an individual who resides within the judicial district of the United States District Court for the Eastern District of Michigan, Southern Division.  Mrs. Ahmed is a Yemeni-born female, who is now a citizen of the United States of America.  Plaintiff is referred to as "Mrs. Ahmed" in this Complaint.

2.      Defendant School District of the City of Hamtramck is a Michigan general powers school district within the meaning of Michigan's Revised School Code, MCL 380.1, *et seq*. The Hamtramck Schools is in the City of Hamtramck, Michigan, which is within the judicial district of the United States District Court for the Eastern District of Michigan, Southern Division.  This Defendant is referred to as "the Hamtramck Schools" in this Complaint

3.      The Hamtramck Schools is a "public school employer" within the meaning of Michigan's Public Employee Relations Act (PERA), MCL 423.201, *et seq*.

4.      Defendants Evan Majors "Mr. Majors," Salah Hadwan "Mr. Hadwan," Moortadha Obaid "Mr. Obaid," Mr. Showkat Chowdhury "Mr. Chowdhury," and Ms. Regan Watson "Ms. Watson" are individuals who reside in the City of Hamtramck, which is within the judicial district of the United States District Court

for the Eastern District of Michigan, Southern Division.  These Defendants are referred to collectively as the "School Board Defendants" in this Complaint.

5.     Defendant Hamtramck Federation of Teachers, AFL-CIO, is voluntary association and a "bargaining representative" within the meaning of Michigan's PERA. This Defendant is located within the judicial district of the United States District Court for the Eastern District of Michigan, Southern Division.  This Defendant is referred to as the "Teachers Union" in this Complaint.

6.     The Teachers Union is the exclusive bargaining representative for all teachers employed by the Hamtramck Schools.

7.     The acts, events, and omissions that gave rise to the claims asserted by Mrs. Ahmed occurred within the judicial district of the United States District Court for the Eastern District of Michigan, Southern Division.

8.     Venue for this civil action is properly laid in the United States District Court for the Eastern District of Michigan.  28 USC § 1391

9.     This Court has subject matter jurisdiction (original jurisdiction) over this civil action because Mrs. Ahmed has alleged claims arising under the Constitution and laws of the United States.  28 USC § 1331.

10.    This Court has supplemental jurisdiction over Mrs. Ahmed's state law claims because they are so related to claims over which this Court has original

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 USC § 1367(a).

## GENERAL ALLEGATIONS

11. The Hamtramck Schools is responsible for educating approximately 3,300 students in grades kindergarten through 12.

12. Approximately 79% of the students in the Hamtramck Schools are not proficient in reading according to the State of Michigan.

13. Approximately 81% of the students in the Hamtramck Schools are not proficient in math according to the State of Michigan.

14. In 2016, the Hamtramck Schools hired Mrs. Ahmed to serve as its English Language Development Director.

15. In 2018, the Hamtramck Schools' Superintendent was Mr. Thomas Niczay (Mr. Niczay).

16. In 2018, Mr. Niczay involuntarily transferred several teachers represented by the Teachers Union.

17. Mr. Niczay suffered no repercussions for involuntarily transferring these teachers; not from the Hamtramck Schools, not from the School Board Defendants, and not from the Teachers Union.

18. In 2022, the Hamtramck Schools re-hired Mr. Niczay to serve as a consultant.

19.    The Hamtramck Schools promoted Mrs. Ahmed to the position of Superintendent of Schools in 2019.

20.    Mrs. Ahmed's evaluations for the 2019-2020 and 2020-2021 school years were "highly effective," the highest possible rating.

21.    The Hamtramck Schools offered to renew Mrs. Ahmed's employment contract as Superintendent of Schools for the period July 1, 2021 to June 30, 2024. Mrs. Ahmed accepted, and the parties entered into an employment contract including the following provisions, among others:

A.    Mrs. Ahmed would be employed as Superintendent from July 1, 2021 to June 30, 2024;

B.    Mrs. Ahmed would be the Hamtramck Schools' Chief Administrative Officer and, in that capacity, would have authority to organize, reorganize or arrange the departments within the Hamtramck Schools, including assigning and reassigning administrative and supervisory staff in a manner that, in her judgment, best served the School District; and,

C.    Mrs. Ahmed would not be terminated except for just cause, defined to include, among other things, a disability that prevented her from performing the essential functions of her job,

with or without reasonable accommodation, for an aggregate of 12 months during the term of her agreement.

22.    The COVID-19 pandemic became acute in March 2020.

23.    The COVID-19 pandemic, with its attendant health risks and school closures, adversely affected Hamtramck Schools' students and teachers.

24.    In early August 2021, the Hamtramck Schools notified approximately three teachers they had been transferred at their request (voluntary transfers).

25.    In early August 2021, the Hamtramck Schools notified approximately nine teacher they would be involuntarily transferred.  Subsequently, these transfers were made to improve the educational opportunities of Hamtramck Schools' students.

26.    In late August 2021, a popular teacher employed at the Hamtramck Schools' Dickinson East Elementary School resigned her employment as the result of a legal process initiated by the Hamtramck Schools.

27.    As a result of the personnel actions described in paragraphs 24 through 26 of this Complaint, the School Board Defendants and the Teachers Union began to demand Mrs. Ahmed discharge the Hamtramck Schools' Executive Director of Human Resources, Ms. Michelle Imbrunone.

28.    In late August or early September 2020, the Hamtramck Schools' Director of Special Education notified Mrs. Ahmed that more autistic students than

expected had enrolled in Dickinson East Elementary School for the 2021-2022 school year.

29.     This unexpected influx of autistic students required the Hamtramck Schools to involuntarily transfer two more teachers from their former assignments to Dickinson East Elementary School so the autistic students would have teachers who were properly certified under federal and Michigan law.

30.     Notwithstanding the requirements of federal and Michigan law, of which they were aware, the Hamtramck Schools and the School Board Defendants refused to permit the involuntary transfer of teachers to serve these autistic students, resulting in the Hamtramck Schools being out of compliance with federal and Michigan laws governing the education of disabled students.

31.     Mrs. Ahmed opposed the Hamtramck Schools failure to provide disabled students with teachers who were properly certified under federal and state law.

32.     Mrs. Ahmed delegated responsibility for implementing the involuntary transfers described in paragraphs 25 and 29 to the Hamtramck Schools Executive Director of Human Resources, Ms. Michelle Imbrunone.

33.     PERA provides that a public school employer, like the Hamtramck Schools, has the right to place teachers in those positions that, in the opinion of the public school employer, is best for students.

34.     Under PERA, teacher placement decisions, including decisions to involuntary transfer teachers, is a prohibited subject of bargaining.  As a prohibited subject of bargaining, neither a public-school employer, in this case the Hamtramck Schools, nor a bargaining representative of public school teachers, in this case the Teachers Union, may negotiate the issue during collective bargaining and, furthermore, any agreement concerning the subject of teacher placement decisions, including involuntary transfers, is not enforceable.

35.     Accordingly, the teachers that were or might be involuntarily transferred had no legal recourse.  Neither did their bargaining representative, the Teachers Union.

36.     Lacking legal recourse, the teachers who were or might be involuntarily transferred and the Teachers Union conspired with the Hamtramck Schools and School Board Defendants to terminate the employment of Mrs. Ahmed and Ms. Imbrunone.

37.     The conspiracy against Mrs. Ahmed included, but was not limited to, the following overt acts:

       A.     Posting information on the Teachers Unions' Facebook account impugning Mrs. Ahmed's professional reputation;

B.     Providing information to a local newspaper, The Hamtramck Review, which ran articles impugning Mrs. Ahmed's professional reputation;

C.     Providing information to a local newspaper, the Yemeni American, which ran an article impugning Mrs. Ahmed's professional reputation;

D.     Providing information to a state-wide media outlet, Capitol Confidential, which ran an article impugning Mrs. Ahmed's professional reputation;

E.     Providing information to other news sources impugning Mrs. Ahmed's professional reputation;

E.     Repeatedly appearing in Mrs. Ahmed's office to demand Mrs. Imbrunone's dismissal, in breach of Mrs. Ahmed's contractual right to manage Hamtramck Schools' personnel decisions;

F.     Stating they would terminate Mrs. Ahmed's employment unless she relinquished her contractual right to manage Hamtramck Schools' personnel decisions and terminated Mrs. Imbrunone's employment;

G.     Demanding Teachers Union members be promoted to administrative positions in violation of Mrs. Ahmed's

contractual right to manage Hamtramck Schools' administrative personnel decisions;

H.   Refusing to permit Mrs. Ahmed to bring the Hamtramck Schools in conformity with federal and Michigan law by involuntarily transferring properly certified teachers to instruct the influx of autistic student who enrolled in the Hamtramck Schools at the beginning of the 2021-2022 school year;

I.   Harassing Mrs. Ahmed in an effort to force her to dismiss Mrs. Imbrunone, contrary to Mrs. Ahmed's contractual right to manage Hamtramck Schools' personnel decisions;

J.   Blaming Mrs. Ahmed and Ms. Imbrunone for teacher retirements and resignations that were not attributable to their acts or omissions, including teacher retirements and resignations attributable to the decision of the Hamtramck Schools that resulted in the resignation of a popular tenured teacher;

K.   Placing Ms. Imbrunone on a paid leave of absence on October 28, 2021 and terminating Ms. Imbrunone's employment effective June 30, 2022.

L.   Soliciting complaints against Ms. Imbrunone; and,

M. Contrary to applicable Michigan law, notifying Ms. Imbrunone the Board of Education was considering not renewing her employment at the end of the 2021-2022 school year, and terminating her employment effective June 30, 2022.

38. This conspiracy, the overt acts in furtherance of this conspiracy as described in paragraph 37, A-M, together with the stress all educators suffered during the COVID-19 pandemic, caused Mrs. Ahmed to experience severe emotional distress.

39. Mrs. Ahmed's physician advised her, for the sake of her health, to take a medical leave of absence from work.

40. Mrs. Ahmed duly notified the Board of Education she was taking a medical leave of absence for three months, from October 10, 2021 until January 10, 2022.

41. After Mrs. Ahmed began her leave of absence, the Hamtramck Schools, the School Board Defendants, and the Teachers Union took the following additional overt steps in furtherance of their conspiracy to terminate the employment of Mrs. Ahmed and Ms. Imbrunone:

A. Directed Hamtramck Schools' employees, Mrs. Sherry Lynem and Mr. Nabil Nagi, to send Mrs. Ahmed a letter that included the following statements and directives:

(1)    Notifying her the Board of Education had appointed two acting superintendents to replace her, Mrs. Lynem and Mr. Nagi,

(2)    Not to take any official actions, including making any official statements or official communications, that were not pre-authorized by Mrs. Lynem and Mr. Nagi,

(3)    To make clear "to all concerned" that she was not authorized to speak or act on behalf of the Hamtramck Schools,

(4)    Not to communicate with Hamtramck Schools' employees or contractors concerning business or her "employment situation,"

(5)    To immediately return all records, passwords, access codes, keys, pass cards "and the like" in her possession or under her control, and

(6)    To cooperate with Ms. Lynem and Mr. Nagi with respect to the transition of her duties to them.

B.    Terminated Mrs. Ahmed's access to Hamtramck Schools' computer accounts and other records

C.      Removed references to Mrs. Ahmed from the Hamtramck Schools' web site and, instead, replaced her picture, name, and title with Mr. Nagi's, who was identified as the Superintendent of Schools;

D.      Placed Mrs. Imbrunone on a paid leave of absence and, subsequently and in a manner contrary to applicable Michigan law, initiated a process that resulted in the termination of Ms. Imbrunone's employment; and,

E.      Re-hired Mr. Niczay as a consultant, in part to perform duties formerly performed by Mrs. Ahmed.

42.      On December 23, 2021, Mrs. Ahmed notified the Hamtramck Schools, in writing, she would return from her medical leave of absence on January 3, 2022.

43.      Regardless of receiving Mrs. Ahmed's notification she was returning from her medical leave of absence, the Hamtramck Schools, on December 29, 2021, notified Mrs. Ahmed she was prohibited from returning to work.   The same communication notified Mrs. Ahmed the Hamtramck Schools was "investigating" alleged misconduct on her part, directed her to return certain items to the Hamtramck Schools, and asked her to collect her personal effects from her office.

44.      Mrs. Ahmed responded, on January 12, 2022, that she was shocked by the Hamtramck Schools' decisions, felt its decision were based on illegal

considerations, and that she had formally asked the Equal Employment Opportunity Commission (EEOC) and the Department of Labor (DOL) to investigate claims of illegal discrimination, harassment, and retaliation.

45.    Earlier, on January 4, 2022, Mrs. Ahmed had begun the process of filing a charge of discrimination with the EEOC, alleging illegal discrimination on the basis of color, national origin, sex, disability, and illegal retaliation.

46.    The EEOC issued Mrs. Ahmed a right-to-sue letter on April 1, 2022.

47.    Since January 12, 2022, the Hamtramck Schools, the School Board Defendants, and the Teachers Union have taken the following additional steps in furtherance of their conspiracy to replaced Mrs. Ahmed and impugn her professional reputation:

A.    Stated publicly the Hamtramck Schools is investigating Mrs. Ahmed; and,

B.    Removed all of Mrs. Ahmed's personal property from her office and placed it in a box outside her office.

## CAUSES OF ACTION

### Count I – Violation of Title I of the ADA (Discrimination)

48.    Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 47 of this Complaint.

49.     Title I of the Americans with Disabilities Act (ADA) prohibits employers and labor organizations from discriminating against qualified individuals with disabilities.

50.     The Hamtramck Schools is an employer within the meaning of Title I of the ADA.

51.     The Teachers Union is a labor organization within the meaning of Title I of the ADA.

52.     Mrs. Ahmed is a qualified individual within the meaning of Title I of the ADA.

53.     Mrs. Ahmed is disabled, perceived to be disabled, or has a record of a disability within the meaning of Title I of the ADA.

54.     The Hamtramck Schools, the School Board Defendants, and the Teachers Union conspired to and did discriminate against Mrs. Ahmed on the basis of disability as follows:

        A.     Mrs. Ahmed's employment contract provided she would not be discharged except for just cause, defined to include, among other things, a disability that prevented her from performing the essential functions of her position, with or without reasonable accommodation, for an aggregate of 12 months during the term of the contract;

B.    Mrs. Ahmed took a three-month medical leave of absence, scheduled to begin on October 10, 2021 and end on January 10, 2022;

C.    During her medical leave of absence, the Hamtramck Schools, the School Board Defendants, and the Teachers Union conspired to terminate Mrs. Ahmed's employment with the Hamtramck Schools and took overt steps toward this common goal as alleged in paragraph 37 of this Complaint;

D.    On December 23, 2021, Mrs. Ahmed notified the Hamtramck Schools she was ready to return from her medical leave of absence a week early, on January 3, 2022;

E.    Nevertheless, the Hamtramck Schools prohibited Mrs. Ahmed from returning to work after her medical leave of absence ended and awarded another person her job title; and,

F.    After the Hamtramck Schools prohibited Mrs. Ahmed from returning to work after her medical leave of absence ended, Defendants continued to discriminate against her on the basis of disability as alleged in this Complaint.

THEREFORE, Plaintiff, Mrs. Jaleelah Ahmed, respectfully asks this Honorable Court to award Mrs. Ahmed the legal and equitable relief set forth in the Relief Requested section of this Complaint, as permitted by applicable law.

### Count II – Violation of Title II ADA and Section 504 of the Rehabilitation Act of 1973 (Discrimination)

55.    Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 54 of this Complaint.

56.    Title II of the ADA and Section 504 of the Rehabilitation Act of 1973 prohibit state and local governments from discriminating against qualified individuals with disabilities.

57.    The Hamtramck Schools is a local government within the meaning of Title II of the ADA and Section 504 of the Rehabilitation Act of 1973.

58.    Mrs. Ahmed is a qualified individual with a disability within the meaning of Title II of the ADA and Section 504 of the Rehabilitation Act of 1973.

59.    Mrs. Ahmed is disabled, perceived to be disabled or has a record of a disability within the meaning of Title II of the ADA and Section 504 of the Rehabilitation Act of 1973.

60.    The Hamtramck Schools, the School Board Defendants, and the Teachers' Union, conspired to and did discriminate against Mrs. Ahmed on the basis of disability as follows:

A.   Mrs. Ahmed's employment contract provided she would not be discharged except for just cause, defined to include, among other things, a disability that prevent her from performing the essential functions of her position, with or without reasonable accommodation, for an aggregate of 12 months during the term of the contract;

B.   Mrs. Ahmed took a three-month medical leave of absence, scheduled to begin on October 10, 2021 and end on January 10, 2022;

C.   During her medical leave of absence, the Hamtramck Schools, the School Board Defendants, and the Teachers Union conspired to terminate Mrs. Ahmed's employment with the Hamtramck Schools and took overt steps toward this common goal as alleged in paragraph 37 of this Complaint;

D.   On December 23, 2021, Mrs. Ahmed notified the Hamtramck Schools she was ready to return from her medical leave of absence a week early, on January 3, 2022;

E.   Nevertheless, the Hamtramck Schools prohibited Mrs. Ahmed from returning to work after her medical leave of absence ended and awarded another person her job title; and,

F.     After the Hamtramck Schools prohibited Mrs. Ahmed from returning to work after her medical leave of absence ended, Defendants continued to discriminate against her on the basis of disability as alleged in this Complaint.

THEREFORE, Plaintiff, Mrs. Jaleelah Ahmed, respectfully asks this Honorable Court to award Mrs. Ahmed the legal and equitable relief set forth in the Relief Requested section of this Complaint, as permitted by applicable law.

## Count III – Violation of Michigan's Persons with Disabilities Civil Rights Act (Discrimination)

61.    Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 though 60 of this Complaint.

62.    Michigan's Persons with Disabilities Civil Rights Act (PWDCRA) prohibits employers, educational institutions, and labor organizations from discriminating against a person with a disability.

63.    The Hamtramck Schools is an employer and an educational institution within the meaning of the PWDCRA.

64.    The School Board Defendants are employers within the meaning of the PWDCRA.

65.    The Teachers Union is a labor organization within the meaning of the PWDCRA.

66.    Mrs. Ahmed is a person with a disability within the meaning of the PWDCRA.

67.    The Hamtramck Schools, the School Board Defendants, and the Teachers' Union, conspired to and did discriminate against Mrs. Ahmed on the basis of disability as follows:

      A.    Mrs. Ahmed's employment contract provided she would not be discharged except for just cause, defined to include, among other things, a disability that prevent her from performing the essential functions of her position, with or without reasonable accommodation, for an aggregate of 12 months during the term of the contract;

      B.    Mrs. Ahmed took a three-month medical leave of absence, scheduled to begin on October 10, 2021 and to end on January 10, 2022;

      C.    During her medical leave of absence, the Hamtramck Schools, the School Board Defendants, and the Teachers Union conspired to terminate Mrs. Ahmed's employment with the Hamtramck Schools and took overt steps toward this common goal as alleged in paragraph 37 of this Complaint;

D.     On December 23, 2021, Mrs. Ahmed notified the Hamtramck Schools she was ready to return from her medical leave of absence a week early, on January 3, 2022;

E.     Nevertheless, the Hamtramck Schools prohibited Mrs. Ahmed from returning to work after her medical leave of absence ended and awarded another person her job title; and,

F.     After the Hamtramck Schools prohibited Mrs. Ahmed from returning to work after her medical leave of absence ended, Defendants continued to discriminate against her on the basis of disability as alleged in this Complaint.

THEREFORE, Plaintiff, Mrs. Jaleelah Ahmed, respectfully asks this Honorable Court to award Mrs. Ahmed the legal and equitable relief set forth in the Relief Requested section of this Complaint, as permitted by applicable law.

**Count IV – Violation of Title II of ADA, Section 504 of the Rehabilitation Act of 1973, and Michigan's PWDCRA (Retaliation)**

68.    Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 67 of this Complaint.

69.    Mrs. Ahmed opposed conduct made unlawful by the Individuals with Disabilities Education Act (IDEA), Michigan special education laws, Title II of the ADA, Section 504 of the Rehabilitation Act of 1973, and the PWDCRA by insisting on involuntarily transferring teachers so that disabled autistic students would be

taught by properly trained and certified teachers as required by the IDEA and Michigan special education law.

70.     In retaliation for Mrs. Ahmed's opposition to conduct made unlawful by IDEA, Michigan special education laws, Title II of the ADA, Section 504 of the Rehabilitation Act of 1973 and the PWDCRA, Defendants conspired to and did retaliate against Mrs. Ahmed as alleged in this Complaint

THEREFORE, Plaintiff, Mrs. Jaleelah Ahmed, respectfully asks this Honorable Court to award Mrs. Ahmed the legal and equitable relief set forth in the Relief Requested section of this Complaint, as permitted by applicable law.

### Count V – Violation of Title I of ADA and Title VII (Retaliation)

71.     Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 70 of this Complaint.

72.     Mrs. Ahmed filed a charge of discrimination with the EEOC on or about January 4, 2022 alleging discrimination on the basis of disability, sex, and national origin.

73.     Defendants were aware of Mrs. Ahmed's charge of discrimination no later than January 12, 2022.

74.     Defendants retaliated against Mrs. Ahmed for filing the charge of discrimination by, among other things:

A.     Persisting in refusing to permit her to return to work;

B.      Awarding another person the title of superintendent;

C.      Initiating a so-called investigation into alleged misconduct;

D.      Publicly announcing the so-called investigation;

E.      Removing her personal possession from her office and placing them in a box outside her office door;

F.      Publishing defamatory statements as alleged in Count XIII of this Complaint;

THEREFORE, Plaintiff, Mrs. Jaleelah Ahmed, respectfully asks this Honorable Court to award Mrs. Ahmed the legal and equitable relief set forth in the Relief Requested section of this Complaint, as permitted by applicable law.

**Count VI – Violation of Title VII (Sex Discrimination)**

75.     Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 74 of this Complaint.

76.     Title VII of the Civil Rights Act of 1964 prohibits employers and labor organizations from discrimination in employment on the basis of sex.

77.     The Hamtramck Schools is an employer within the meaning of Title VII.

78.     The Teachers Union is a labor organization within the meaning of Title VII.

79.    The Hamtramck Schools, the School Board Defendants, and the Teachers Union conspired to and discriminated against Mrs. Ahmed on the basis of sex as follows:

    A.    The superintendent who preceded Mrs. Ahmed, Mr. Niczay, is a male;

    B.    Mr. Niczay involuntarily transferred several teachers;

    C.    Mr. Niczay did not suffer any repercussions for involuntarily transferring several teachers;

    D.    Defendants intentionally interred with Mrs. Ahmed's contract because she involuntarily transferred several teachers;

    E.    Defendants breached Mrs. Ahmed's contract because she involuntarily transferred several teachers;

    F.    Defendants breached Mrs. Ahmed's contract because she recommended the involuntary transfer of additional teachers.

    G.    Defendants prevented Mrs. Ahmed from returning to work after her medical leave of absence because she involuntarily transferred several teachers and awarded another person her title; and,

H.  Defendants re-hired Mr. Niczay as a consultant to perform some of Mrs. Ahmed's duties because she involuntarily transferred several teachers.

THEREFORE, Plaintiff, Mrs. Jaleelah Ahmed, respectfully asks this Honorable Court to award Mrs. Ahmed the legal and equitable relief set forth in the Relief Requested section of this Complaint, as permitted by applicable law.

### Count VII – Violation of ELCRA (Sex Discrimination)

80.  Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 79 of this Complaint.

81.  Michigan's Elliott-Larsen Civil Rights Act (ELCRA) prohibits employers and labor organizations from discrimination in employment on the basis of sex.

82.  The Hamtramck Schools is an employer within the meaning of the ELCRA.

83.  The Teachers Union is a labor organization within the meaning of the ELCRA.

84.  The Hamtramck Schools, the School Board Defendants, and the Teachers Union conspired to and discriminated against Mrs. Ahmed on the basis of sex as follows:

A.   The superintendent who preceded Mrs. Ahmed, Mr. Niczay, is a male;

B.   Mr. Niczay involuntarily transferred several teachers;

C.   Mr. Niczay did not suffer any repercussions for involuntarily transferring several teachers;

D.   Defendants intentionally interfered with Mrs. Ahmed's contract because she involuntarily transferred several teachers;

E.   Defendants breached Mrs. Ahmed's contract because she involuntarily transferred several teachers;

F.   Defendants breached Mrs. Ahmed's contract because she recommended the involuntary transfer of additional teachers;

G.   Defendants prevented Mrs. Ahmed from returning to work after her medical leave of absence because she involuntarily transferred several teachers; and,

H.   Defendants re-hired Mr. Niczay as a consultant to perform some of Mrs. Ahmed's duties because she involuntarily transferred several teachers.

THEREFORE, Plaintiff, Mrs. Jaleelah Ahmed, respectfully asks this Honorable Court to award Mrs. Ahmed the legal and equitable relief set forth in the Relief Requested section of this Complaint, as permitted by applicable law.

### Count VIII – Violation of Title VII (National Origin Discrimination)

85.     Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 84 of this Complaint.

86.     Title VII of the Civil Rights Act of 1964 prohibits employers and labor organizations from discrimination in employment on the basis of national origin.

87.     The Hamtramck Schools is an employer within the meaning of Title VII.

88.     The Teachers Union is a labor organization within the meaning of Title VII.

89.     The Hamtramck Schools, the School Board Defendants, and the Teachers Union conspired to and discriminated against Mrs. Ahmed on the basis of national origin as follows:

> A.     The superintendent who preceded Mrs. Ahmed, Mr. Niczay, was born in the United States;
>
> B.     Mrs. Ahmed was born in Yemen;
>
> C.     Mr. Niczay involuntarily transferred several teachers;
>
> D.     Mr. Niczay did not suffer any repercussions for involuntarily transferring several teachers;
>
> E.     Defendants intentionally interfered with Mrs. Ahmed's contract because she involuntarily transferred several teachers;

F.      Defendants breached Mrs. Ahmed's contract because she involuntarily transferred several teachers;

G.      Defendants breached Mrs. Ahmed's contract because she recommended the involuntarily transfer of additional teachers;

H.      Defendants prevented Mrs. Ahmed from returning to work after her medical leave of absence because she involuntarily transferred several teachers and awarded another person her job title; and,

I.      Defendants re-hired Mr. Niczay as a consultant to perform some of Mrs. Ahmed's duties because she involuntarily transferred several teachers.

THEREFORE, Plaintiff, Mrs. Jaleelah Ahmed, respectfully asks this Honorable Court to award Mrs. Ahmed the legal and equitable relief set forth in the Relief Requested section of this Complaint, as permitted by applicable law.

## Count IX – Violation of ELCRA (National Origin Discrimination)

90.    Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 89 of this Complaint.

91.    The ELCRA prohibits employers, educational institutions, and labor organizations from discrimination in employment on the basis of national origin.

92.     The Hamtramck Schools is an employer within the meaning of the ELCRA.

93.     The Hamtramck Schools is an educational institution within the meaning of the ELCRA.

94.     The Teachers Union is a labor organization within the meaning of the ELCRA.

95.     The Hamtramck Schools, the School Board Defendants, and the Teachers Union conspired to and discriminated against Mrs. Ahmed on the basis of sex as follows:

A.      The superintendent who preceded Mrs. Ahmed, Mr. Niczay, was born in the United States;

B.      Mrs. Ahmed was born in Yemen;

C.      Mr. Niczay involuntarily transferred several teachers;

D.      Mr. Niczay did not suffer any repercussions for involuntarily transferring several teachers;

E.      Defendants intentionally interfered with Mrs. Ahmed's contract because she involuntarily transferred several teachers;

F.      Defendants breached Mrs. Ahmed's contract because she involuntarily transferred several teachers;

G.     Defendants breached Mrs. Ahmed's contract because she recommended the involuntary transfer of additional teachers;

H.     Defendants prevented Mrs. Ahmed from returning to work after her medical leave of absence because she involuntarily transferred several teachers and awarded another person her job title; and,

I.     Defendants re-hired Mr. Niczay as a consultant to perform some of Mrs. Ahmed's duties because she involuntarily transferred several teachers.

THEREFORE, Plaintiff, Mrs. Jaleelah Ahmed, respectfully asks this Honorable Court to award Mrs. Ahmed the legal and equitable relief set forth in the Relief Requested section of this Complaint, as permitted by applicable law.

## Count X – Violation of Due Process Clause (Section 1983)

96.     Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 95 of this Complaint by this reference.

97.     The Fourteenth Amendment of the Constitution of the United States prohibits the Hamtramck Schools and the School Board Defendants from depriving Mrs. Ahmed of her property without due process of law.  This provision of the Fourteenth Amendment is referred to as the Due Process Clause.

98.     The Due Process Clause is enforceable through 42 USC § 1983.

99.    Mrs. Ahmed has a property interest in her employment contract with the Hamtramck Schools.

100.   Mrs. Ahmed property interest in her employment contract with the Hamtramck Schools included:

    A.    Her right to be employed as the Superintendent of the Hamtramck Schools from July 1, 2021 to June 30, 2024; and,

    B.    Her right to act as the Hamtramck Schools Chief Administrative Office including, but not limited to, her right to assign and reassign administrative and supervisory staff.

101.   The Hamtramck Schools and the School Board Defendants deprived Mrs. Ahmed of these property rights without any process, much less due process, in the manner described in this Complaint.

102.   The Hamtramck Schools and the School Board Defendants (individually and collectively) are persons within the meaning of 42 USC § 1983.

103.   The Hamtramck Schools and the School Board Defendants (individually and collectively) were acting under color of Michigan law.

104.   The Hamtramck Schools and the School Board Defendants (individually and collectively) caused Mrs. Ahmed to incur damages.

THEREFORE, Plaintiff, Mrs. Jaleelah Ahmed, respectfully asks this Honorable Court to award Mrs. Ahmed the legal and equitable relief set forth in the Relief Requested section of this Complaint, as permitted by applicable law.

**Count XI – Violation of Due Process Clause of Michigan Constitution**

105.   Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 104 of this Complaint.

106.   The Constitution of the State of Michigan provides that "no person shall ... be deprived of ... property without due process of law."  The Constitution of the State of Michigan further provides that "[t]he right of all individuals ... to fair and just treatment in the course of legislative and executive investigations ... shall not be infringed."  Mich. Const., Art. 1, § 17.

107.   Mrs. Ahmed has a property interest in her employment contract with the Hamtramck Schools.

108.   Mrs. Ahmed property interest in her employment contract with the Hamtramck Schools included:

> A.   Her right to be employed as the Superintendent of the Hamtramck Schools from July 1, 2021 to June 30, 2024; and,
>
> B.   Her right to act as the Hamtramck Schools Chief Administrative Office including, but not limited to, her right to assign and reassign administrative and supervisory staff.

109. The Hamtramck Schools and the School Board Defendants deprived Mrs. Ahmed of these property rights without any process, much less due process, in the manner described in this Complaint.

110. The Hamtramck Schools and the School Board Defendants did not conduct any investigation before depriving Mrs. Ahmed of her property rights in her employment contract, much less a "fair and just" investigation.

111. Mrs. Ahmed incurred damages as a result of the Hamtramck Schools and the School Board Defendants violation of her right to due process under the Michigan Constitution.

THEREFORE, Plaintiff, Mrs. Jaleelah Ahmed, respectfully asks this Honorable Court to award Mrs. Ahmed the legal and equitable relief set forth in the Relief Requested section of this Complaint, as permitted by applicable law.

**Count XII – Intentional Interference with Contractual Relations**

110. Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 109 of this Complaint.

111. The Hamtramck Schools and Mrs. Ahmed were parties to an employment contract that included the following provisions, among others:

      A.    Mrs. Ahmed would be employed as Superintendent from July 1, 2021 to June 30, 2024;

B.   Mrs. Ahmed would be the Hamtramck Schools' Chief Administrative Officer and, in that capacity, would have authority to organize, reorganize, or arrange the departments within the Hamtramck Schools, including assigning and reassigning administrative and supervisory staff in a manner that, in her judgment, best served the School District; and,

C.   Mrs. Ahmed would not be terminated except for just cause, defined to include, among other things, a disability that prevented her from performing the essential functions of her position, with or without reasonable accommodation, for an aggregate of 12 months during the term of the contract.

112.   The School District Defendants and the Teachers Union were aware of Mrs. Ahmed's employment contract with the Hamtramck Schools.

113.   The School Board Defendants and the Teachers Union intentionally and improperly interfered with Mrs. Ahmed's employment contract with the Hamtramck Schools in the manner described in this Complaint.

114.   The School Board Defendants and the Teachers Unions intentional and improper interference with Mrs. Ahmed's employment contract with the Hamtramck Schools caused the Hamtramck Schools to breach the contract.

115.   As a result of the intentional and improper interference with Mrs. Ahmed's employment contract she suffered damages.

116.   The School Board Defendant's cannot invoke the defense of governmental immunity to shield themselves from liability for an intentional tort.

THEREFORE, Plaintiff, Mrs. Jaleelah Ahmed, respectfully asks this Honorable Court to award Mrs. Ahmed the legal relief set forth in the Relief Requested section of this Complaint, as permitted by applicable law.

## Count XIII – Defamation and Defamation Per Se

117.   Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 116 of this Complaint.

118.   The School Board Defendants and the Teacher's Union made the following materially false statements that damaged Mrs. Ahmed's reputation:

A.   Mrs. Ahmed was collecting her salary even though she refused to work;

B.   There was no legitimate reason for Mrs. Ahmed's medical leave of absence;

C.   It was necessary for the Hamtramck Schools to replace her;

D.   It was necessary for the Hamtramck Schools to ban her from her job, official responsibilities, and access to work-related materials;

     E.     It was necessary for Hamtramck Schools employees not to contact her;

     F.     It was necessary Mrs. Ahmed not contact Hamtramck Schools employees;

     G.     The Hamtramck Schools was going "backward" under her leadership;

     H.     The Hamtramck Schools were "chaotic" under her leadership;

     I.     All teacher resignations during the 2021-2022 school year were caused by or related to her involuntary transfer decisions; and,

     H.     Her professional decisions were inconsistent.

119.  The School Board Defendants and the Teacher's Union published these materially false statements with bad faith or ill will.

120.  Because these materially false statements were injurious to Mrs. Ahmed's professional reputation, they constitute defamation *per se*.

121.  The School Board Defendant's cannot invoke governmental immunity as a defense to shield themselves from liability for an intentional tort.

THEREFORE, Plaintiff, Mrs. Jaleelah Ahmed, respectfully asks this Honorable Court to award Mrs. Ahmed the legal and equitable relief set forth in the Relief Requested section of this Complaint, as permitted by applicable law.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, Mrs. Jaleelah Ahmed, respectfully asks this Honorable Court to award her the following preliminary and permanent relief:

A.  A preliminary and permanent injunction prohibiting Defendants from terminating Plaintiff's employment as Superintendent of the Hamtramck Schools in breach of her employment contract or in violation of the constitutions and laws of the United States and the State of Michigan;

B.  A preliminary and permanent injunction prohibiting Defendants from continuing to refuse to permit Plaintiff to return to her position as Superintendent of the Hamtramck Schools;

C.  A preliminary and permanent injunction prohibiting Defendants from interfering with Plaintiff's performance of the duties of the Superintendent of the Hamtramck Schools;

D.  Back-pay and front-pay if Defendants succeed in terminating Plaintiff's employment, including the value of all fringe, retirement, and other benefits she would have received had her employment not been terminated;

E.  Damages for mental anguish and emotional distress in the maximum amount permitted by law;

F.  Exemplary damages;

G.      Punitive damages;

H.      Statutory attorneys' fees and costs;

I.      Actual reasonable attorneys' fees and costs; and,

J.      Whatever other relief this Court deems appropriate.

Respectfully submitted,

/s/ Robert A. Lusk (P38122)
EDUCATORS LEGAL SERVICES, PLLC
By: Robert A. Lusk
9070 Campbell Creek Drive
Commerce Township, Michigan 48390
*rlusk@educatorslegalservices.com*