UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Jaleelah Ahmed,

      Plaintiff,                         Case  No.  2:22-cv-11127-GAD-CI

v.                                   Hon. Gershwin A. Drain

School District of the City of Hamtramck,
Evan Major (personally and in his official capacity),
Salah Hadwan (personally and in his official capacity),
Moortadha Obaid (personally and in his official
capacity), Showcat Chowdhury (personally and in his
official capacity), Regan Watson (personally and in her
official capacity), and the
Hamtramck Federation Teachers (AFL-CIO), Jointly and Severally,

      Defendants.

Robert A. Lusk (P38122)
Educators Legal Services, PLLC
Attorney for Plaintiff
9070 Campbell Creek Dr.
Commerce Township, MI 48390
(248) 301-1944
*rlusk@educatorslegalservices.com*

---

## AMENDED COMPLAINT

### PARTIES, JURISDICTION, AND VENUE

Plaintiff, Mrs. Jaleelah Ahmed, files this civil action against Defendants:

School District of the City of Hamtramck; the following current or former members

of the Board of Education of the School District of the City of Hamtramck – Mr.

Evan Major, Mr. Salah Hadwan, Mr. Moortadha Obaid, Mr. Showcat Chowdhury, and Ms. Regan Watson; and, the Hamtramck Federation of Teachers, AFL-CIO.

1.      Plaintiff Jaleelah Ahmed is an individual who resides within the judicial district of the United States District Court for the Eastern District of Michigan, Southern Division.  Mrs. Ahmed is a Yemeni-born female and a citizen of the United States of America.  Plaintiff is referred to as "Mrs. Ahmed" in this Third Amended Complaint.

2.      Defendant School District of the City of Hamtramck is a Michigan general powers school district within the meaning of Michigan's Revised School Code, M.C.L. §§ 380.1, *et seq*. The School District of the City of Hamtramck is located in Hamtramck, Michigan, which is within the judicial district of the United States District Court for the Eastern District of Michigan, Southern Division.  This Defendant is referred to as "the School District" in this Third Amended Complaint.

3.      The School District is a "public school employer" within the meaning of Michigan's Public Employee Relations Act (PERA), M.C.L. §§ 423.201, *et seq*.

4.      Defendants Evan Major "Mr. Major," Salah Hadwan "Mr. Hadwan," Moortadha Obaid "Mr. Obaid," Mr. Showkat Chowdhury "Mr. Chowdhury," and Ms. Regan Watson "Mrs. Watson" are individuals who reside in the City of Hamtramck, which is within the judicial district of the United States District Court for the Eastern District of Michigan, Southern Division.  These Defendants are

2

referred to collectively as the "School Board Defendants" in this Third Amended Complaint.

5. Defendant Hamtramck Federation of Teachers, AFL-CIO, is a voluntary association and a "bargaining representative" within the meaning of Michigan's PERA. This Defendant is located within the judicial district of the United States District Court for the Eastern District of Michigan, Southern Division. This Defendant is referred to as "the HFT" in this Third Amended Complaint.

6. The HFT is affiliated with AFT Michigan, AFL-CIO, formerly known as the Michigan Federation of Teachers, AFL-CIO.

7. The HFT is the exclusive bargaining representative for all teachers employed by the Hamtramck Schools.

8. The acts, events, and omissions that gave rise to the claims asserted by Mrs. Ahmed occurred within the judicial district of the United States District Court for the Eastern District of Michigan, Southern Division.

9. Venue for this civil action is properly laid in the United States District Court for the Eastern District of Michigan. 28 U.S.C. § 1391.

10. This Court has subject matter jurisdiction (original jurisdiction) over this civil action because Mrs. Ahmed has alleged claims arising under the Constitution and laws of the United States. 28 U.S.C. § 1331.

11. This Court has supplemental jurisdiction over Mrs. Ahmed's state law

claims because they are so related to claims over which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

## GENERAL ALLEGATIONS

12. The School District is responsible for educating approximately 3,000 students, pre-school through grade 12.

13. Many of the School District's families and students speak English as a second language.

14. Most of the School District's students are not proficient in reading or mathematics. Approximately 79% of the School District's students are not proficient in reading according to the State of Michigan. Approximately 81% of the students in the School District are not proficient in mathematics according to the State of Michigan.

15. In 2016 the School District hired Mrs. Ahmed to serve as its English Language Development Director. At that time, the School District's Superintendent was Mr. Thomas Niczay (Mr. Niczay), who is a white male.

16. In 2018 Mr. Niczay involuntary transferred several teachers employed by the School District and represented by the HFT.

17. Mr. Niczay suffered no repercussions for involuntarily transferring these teachers; not from the School District, the School Board Defendants, or the

HFT.

18. In fact, in 2022, the School District and the School Board Defendants re-hired Mr. Niczay to serve as a consultant.

19. The School District promoted Mrs. Ahmed to the position of Superintendent in 2019.

20. As Superintendent, Mrs. Ahmed prioritized increasing enrollment, maintaining financial stability, improving the levels of academic proficiency of School District students, improving infrastructure, and offering equitable services to every student.

21. Under Mrs. Ahmed the School District experienced success in improving the academic growth of School District students.

22. During the 2021-2022 school year the School District was recognized by the Wayne County Regional Educational Services Agency (the Michigan intermediate school district in which the School District is located) as showing the greatest improvement in English – Language Arts and Mathematics of any of the 33 school districts located in Wayne County.

23. Michigan's Revised School Code requires the School District's Board of Education to evaluate its superintendent annually.

24. The School District's Board of Education, including the School Board Defendants except Mrs. Watson, evaluated Mrs. Ahmed's performance for the

2019-2020 school year.

25.    Mrs. Ahmed's evaluation for the 2019-2020 school year was "highly effective," which is the highest possible rating.

26.    The School District's Board of Education, including the School Board Defendants, evaluated Mrs. Ahmed's performance for the 2020-2021 school year.

27.    Mrs. Ahmed's evaluation for the 2020-2021 school year was "highly effective," which is the highest possible rating.

28.    The School District's Board of Education, including the School Board Defendants, offered to renew Mrs. Ahmed's employment contract for the period July 1, 2021 to June 30, 2024. Mrs. Ahmed accepted this offer subject to the provisions of her employment contract, which provided, among other things:

  A.    She would be employed as the School District's Superintendent from July 1, 2021 to June 30, 2024;

  B.    She would be the School District's Chief Administrative Officer and, in that capacity, would have authority to organize, reorganize, or arrange the School District's departments, including assigning and reassigning administrative and supervisory staff in a manner that, in her judgment, best served the School District; and,

  C.    She would not be terminated except for just cause, defined to

include, among other things, a disability that prevented her from performing the essential functions of her job, with or without reasonable accommodation, for an aggregate of 12 months during the term of her agreement.

29.     The COVID-19 pandemic resulted in school closures and virtual learning in Michigan school districts, including the School District, from March 2019 through the end of the 2020-2021 school year.

30.     Stressors related to fear of contagion, school closures, and virtual instruction caused many Michigan teachers to retire earlier than they would have otherwise.   These earlier-than-expected retirements opened vacant positions, including vacant positions in school districts that paid more or were otherwise more desirable than the School District.

31.     Several School District teachers applied and were hired for vacant positions in other school districts that paid more or were otherwise more desirable than the School District.

32.     The HFT used the fact that School District teachers were resigning from the School District as leverage to improve their compensation and other aspects of their employment situation with the School District, including to undermine Mrs. Ahmed's authority to manage the School District.

33.     The HFT also used the fact that School District teachers were

resigning from the School District as a pretext for ending the School District's ability to involuntarily transfer teachers.

34.     With respect to the issue of involuntary transfers, in 2011 and as part of a larger school reform legislative program, Michigan's legislature determined student achievement would be improved by giving public school employers the unrestricted right to make certain personnel decisions.   Teacher placement decisions, including decisions to involuntarily transfer of teachers, were among the personnel decisions Michigan's legislature granted public school employers the unrestricted right to make.

35.     Teacher placement decisions, including decisions to involuntarily teacher transfers, became illegal subjects of bargaining under Michigan law. Teachers' unions, including the HFT, were prohibited from bargaining about involuntary transfers, reaching agreements restricting a public-school employer's right to involuntarily transfer teachers, and were prohibited from filing grievances or unfair labor practice charges about involuntarily transfers.

36.     Michigan teachers' unions, including AFT Michigan (of which the HFT is an affiliate), opposed the school reform legislation program described in paragraphs 34 and 35 and took formal and informal opportunities to prevent public-school employers from exercising their right to involuntarily transfer teachers.

37.     Mrs. Ahmed used the School District's right to involuntarily transfer

8

teachers to further improve the academic achievement of School District students and to achieve other objectives directly related to improving their education.  Mrs. Ahmed, with input from other School District administrators, involuntarily transferred approximately nine School District teachers during the summer before the beginning of the 2021-2022 school year.

38.     The HFT's President, Mrs. Toni Coral, told the School Board Defendants, in a misleading fashion, that School District teachers had or were going to leave the School District for positions with other school districts because: they did not like the School District's Executive Director of Human Resources, Mrs. Michelle Imbrunone; the School District had not negotiated retention bonuses; the School District had not promoted HFT members into administrative positions; and, because the School District was involuntarily transferring teachers.

39.     Via Facebook posts, Mrs. Coral notified HFT members she had been in direct contact with the School Board Defendants on their behalf.

40.     The HFT and the School Board Defendants, who were eager to maintain the HFT's political and financial support, conspired and agreed, explicitly or implicitly, to force Mrs. Ahmed: to terminate Mrs. Imbrunone's employment with the School District; to negotiate retention bonuses for HFT members; to promote HFT members into administrative positions; to stop involuntary transfers; and, if Mrs. Ahmed refused to cooperate, to remove her from her position as School

9

District Superintendent.

41. The School Board Defendants undertook the following overt acts and omissions in furtherance of this conspiracy and agreement:

A. The School Board Defendants repeatedly demanded Mrs. Ahmed fire Mrs. Imbrunone in violation of Mrs. Ahmed's contractual right to manage the School District's personnel decisions;

B. When Mrs. Ahmed declined to fire Mrs. Imbrunone in the absence of evidence of wrongdoing and, instead, suggested other alternatives, the School Board Defendants threatened to fire Mrs. Ahmed in violation of her contractual right to act as the School District's Superintendent until June 30, 2024;

C. To "make their case" against Mrs. Imbrunone, several of the School Board Defendants took it upon themselves to enter School District school building during the school day to solicit complaints against Mrs. Imbrunone from School District staff, without notifying Mrs. Ahmed and in violation of Mrs. Ahmed's contractual right to manage the School District's personnel decisions; and,

D. The School Board Defendants demanded Mrs. Ahmed promote

10

HFT members into administrative positions in violation of Mrs. Ahmed's contractual right to manage School District personnel decisions.

42.     The School Board Defendants told Mrs. Ahmed they were working with the HFT as they were making the demands referenced in paragraph 41. A.-D. because they did not want to lose the HFT's financial and political support.  The School Board Defendants also insisted Mrs. Ahmed meet with HFT President Mrs. Coral to discuss these issues and satisfy the HFT's demands.  In response, Mrs. Ahmed told the School Board Defendants she was concerned about the effect of satisfying the HFT's demands on the academic achievement of School District students and on the School District's budget.  The School Board Defendants replied they were more interested in maintaining the HFT's financial and political support than they were about the academic achievement of School District students or the School District's budget.

43.     Mrs. Ahmed met with Mrs. Coral to discuss the issues raised by the School Board Defendants as described in paragraphs 41 and 42.    During this meeting, Mrs. Coral confirmed these were the demands the HFT wanted Mrs. Ahmed to satisfy.

44.     The HFT, in furtherance of the conspiracy and agreement with School Board Defendants, encouraged its members to put pressure on the School Board

11

Defendants and Mrs. Ahmed by publicly blaming Mrs. Ahmed for the fact that School District teachers were resigning from the School District. For example, via Facebook posts, Mrs. Coral organized HFT meetings to coordinate the activities of HFT members who were blaming Mrs. Ahmed for the resignations and to praise them for their efforts

45. HFT members responded to the HFT's encouragement by, among other things, publishing objectively false statements against Mrs. Ahmed to the general public, to the Board of Education, and to the press; including, but not limited to: the School District was going "backward" and was "chaotic" under Mrs. Ahmed's leadership; Mrs. Ahmed's professional decisions were "inconsistent;" Ms. Ahmed's decisions to involuntarily transfer teachers were "misguided;" Mrs. Ahmed's decisions were not in the Student's "best interests;" Mrs. Ahmed decisions were not in the best interest of School District students; Mrs. Ahmed was "indifferent" and "insensitive;" Mrs. Ahmed's decisions were "exclusionary and completely disconnected from the needs of the School District;" Mrs. Ahmed was. "liar;" and Mrs. Ahmed was responsible for the teacher resignations that occurred prior to and at the beginning of the 2021-2022 school year.

46. The statements referenced in paragraph 45 were made by HFT President, Ms. Toni Coral, and HFT members Ms. Michelle Cook, Ms. Therese Comer, Ms. Brooke Horzelski-Jones, Mr. Mathew Rautio, Ms. Jamie Jankowski,

Mr. Maxwell Spayde, Ms. Jennifer Maloney, Ms. Jody Gordon, Ms. Ashley Hofer-Wentzloff, Ms. Marta Hall, Ms. Sandra Codispoti, Ms. Christina Zablocki, Ms. Susan Knapp, Ms. Jessica Schippert, Ms. Allison Morici, and Ms. Theresa Goodridge, Mr. Tim Maher, and Ms. Sarah Filipiak (form HFT Vice-President).

47. The statements referenced in paragraph 45 were published to the Board of Education; on the HFT's Facebook account; to two local newspapers, the Hamtramck Review and the Yemeni American; to two regional newspapers, Deadline Detroit and the Arab American News; and, to a state-wide media outlet, Capitol Confidential. The Hamtramck Review, the Yemeni American, Deadline Detroit, and Capitol Confidential re-published these statements to the general public.

48. These statements referenced in paragraph 45 were malicious and reckless with respect to the truth as evidenced by the fact they were made by people who did not know whether they were true or false and the statements were so uniform it was evident they had been written based on a model provided by the HFT.

49. As the events described in paragraphs 38 through 48 were taking place, Mrs. Ahmed was informed that more disabled students (autistic) than expected had enrolled in one of the School District's elementary schools, Dickinson East.

50. The unexpected influx of disabled students into Dickinson East

required the School District to involuntarily transfer two more teachers from Dickinson West so the disabled students would have teachers who were properly certified under federal and Michigan law.

51.     Notwithstanding the requirements of federal and Michigan law, the School Board Defendants, pursuant to the conspiracy and agreement with the HFT, caused the School District to refuse to permit the legally necessary involuntary transfers; leaving the School District out of compliance with federal and Michigan law and leaving the disabled students without properly certified teachers.

52.     Mrs. Ahmed opposed the School District's refusal to provide the disabled students with properly certified teachers by making clear she intended to make the involuntary transfers necessary to bring the School District into compliance with federal and Michigan law.

53.     The acts and omissions of the School Board Defendants and the HFT, as described in paragraphs 38 through 52 of this Complaint together with the stress associated with the COVID-19 pandemic, caused Mrs. Ahmed to experience severe emotional distress.

54.     Mrs. Ahmed's physician advised her, for the sake of her health, to take a medical leave of absence from work.

55.     Mrs. Ahmed notified the School District's Board of Education she was taking a medical leave of absence from October 10, 2021 to January 10, 2022.

14

Specifically, by letter dated October 11, 2021, Mrs. Ahmed advised the Board of Education's President, "My physician has placed me on a temporary medical leave of absence from October 10, 2021 to January 10, 2022. Her note is attached. I have little doubt the stress related to certain Board members' repeated demands that I take actions I feel are unethical or illegal and that, in my view, impermissibly infringe on the managerial discretion guaranteed by my employment contract have contributed to my current medical situation. Nevertheless, I look forward to resuming my duties as soon as I am able."

56.     Mrs. Ahmed's leave of absence was protected by the Family & Medical Leave Act (FMLA).

57.     Upon receiving notice of Mrs. Ahmed's FMLA leave, the School Board Defendants, in furtherance of the conspiracy and agreement with the HFT, directed School District employees Mrs. Sherry Lynem and Mr. Nabil Nagi to send Mrs. Ahmed a letter that included the following statements and directives:

> A.     Notifying Mrs. Ahmed the Board of Education had appointed two acting superintendents to replace her, Mrs. Lynem and Mr. Nagi;
>
> B.     Directing Mrs. Ahmed not to take any official actions, including any official statements or communication, that were not pre-authorized by Mrs. Lynem and Mr. Nagi;

15

C. Directing her to make clear "to all concerned" that she was not authorized to speak or act for the School District;

D. Directing her not to communicate with School District employees or contractors concerning business or her "employment situation;"

E. Directing her to immediately return to the School District any records, passwords, access codes, keys, pass cards "and the like" in her possession or under her control; and,

F. Directing her to cooperate with Mrs. Lynem and Mr. Nagi with respect to the transition of her duties to them.

58. The School Board Defendants caused the School District to publish a letter to School District staff including the information referenced in paragraph 57.

59. Shortly after these letters were published, the School Board Defendants, in furtherance of the conspiracy and agreement with the HFT, caused the School District to terminate Mrs. Ahmed's access to the School District's computer accounts and other records.

60. The School Board Defendants, in furtherance of their conspiracy and agreement with the HFT, caused the School District to remove all references to Mrs. Ahmed from the School District's web site and replaced her picture, name, and title with Mr. Nagi's, who was identified as the School District's

16

Superintendent.

61. The School Board Defendants, in furtherance of the conspiracy and agreement with the HFT, caused the School District to place Mrs. Imbrunone on a paid leave of absence and, subsequently and in a manner contrary to Michigan law, initiated a process that resulted in the termination of Mrs. Imbrunone's employment.

62. The School Board Defendants, in furtherance of the conspiracy and agreement with the HFT, caused the School District to re-hire Mr. Niczay as a consultant, in part to perform duties formerly performed by Mrs. Ahmed.

63. On December 23, 2021, Mrs. Ahmed notified the School District, in writing, she was released to return to work from her FMLA leave on January 3, 2022.

64. On December 29, 2021, in furtherance of the conspiracy and agreement with the HFT, one of the School Board Defendants, Mr. Major, emailed Mrs. Ahmed to inform her she was prohibited from returning to work. The email notified Mrs. Ahmed she was being placed on a paid leave of absence pending investigation into alleged misconduct. The same email gave Mrs. Ahmed several other directives, similar to those referenced in paragraph 57, directed her to return certain items to the School District and to collect her personal effect from her office.

65. The email or the contents of the email referenced in paragraph 64 were

17

later released to the general public by one or more of the School District Defendants or one or more members of the HFT.

66. Mrs. Ahmed was not notified of the alleged misconduct the School District was ostensibly investigating before she was placed on a paid leave of absence and did not have an opportunity to respond to the allegations against her.

67. Mrs. Ahmed subsequently learned from one or more members of the School District's Board of Education that, regardless of the information the School District published about the so-called investigation, there had never been and was no investigation.

68. In early January 2022, Mrs. Ahmed filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC) and Department of Labor (DOL) alleging illegal discrimination and retaliation on the basis of color, national origin, sex, and disability. Mrs. Ahmed notified the School District of the charges of discrimination on January 12, 2022.

69. Since January 12, 2022, one or more of the School Board Defendants or one or more members of the HFT, in furtherance of their conspiracy and agreement, publicly stated the School District was investigating alleged misconduct against Mrs. Ahmed. This statement was made in retaliation for Mrs. Ahmed advocating for the rights of disabled students, taking an FMLA leave, and filing charges of discrimination with the EEOC and DOL.

18

70. Since January 12, 2022, the School Board Defendants, in furtherance of the conspiracy and agreement with the HFT, removed Mrs. Ahmed's personal effects from her office, placed them in a box outside her door, and again directed her to pick them up. These actions were taken in retaliation for Mrs. Ahmed advocating for disabled students, taking an FMLA leave, and filing charges of discrimination with the EEOC and DOL.

71. Since January 12, 2022, the HFT, in furtherance of the conspiracy and agreement with the School Board Defendants, made the following statements to the Hamtramck Review, which re-published them to the general public: an unnamed HFT member stated Mrs. Ahmed's involuntarily transfers "made no sense and were made in retaliation against HFT members who 'spoke up;'" Mr. David Hecker, President of AFT Michigan (of which the HFT is an affiliate) stated Mrs. Ahmed's actions as Superintendent were "ridiculous;" and, Mrs. Coral stated Mrs. Ahmed was responsible for all teacher resignations that occurred during the 2021-2022 school year and, as a result, the School District was "on the verge of collapse." These actions were taken in retaliation for Mrs. Ahmed advocating for disabled students, taking an FMLA leave, and filing charges of discrimination with the EEOC and DOL.

72. In May 2023, Mrs. Coral testified before the House Labor Committee in favor of proposed legislation that included a provision that would make teacher

19

placement a permitted subject of bargaining.  During the course of her testimony, Mrs. Coral falsely stated, referring to Mrs. Ahmed, that "School District leadership" transferred teachers in retaliation for voicing concerns about the School District and that 30 School District teachers had resigned from the School District because they did not trust "School District leadership."  Mrs. Michelle Cook, a former HFT President, testified at the same hearing that Mrs. Ahmed "abused her" and transferred her as a form of "punishment."  These statements were made with malice as Mrs. Coral and Mrs. Cook knew they were false or acted with reckless disregard as to whether they were false.

73.    Since January 12, 2022, the School Board Defendants, in furtherance of the conspiracy and agreement with the HFT, scheduled a so-called evaluation of Mrs. Ahmed performance as Superintendent during the 2021-2022 school year. This was in retaliation for advocating for disabled students, taking an FMLA leave, filing charges of discrimination with the EEOC and DOL, and filing this civil action.

74.    The so-called evaluation was scheduled to take place at a special Board of Education meeting on October 12, 2022 (even though in past years Mrs. Ahmed's evaluation had been completed on or before the end of the school year in question, i.e., June 30).  The evaluation was facilitated by Mr. Scott Morell on behalf of the Michigan Association of School Boards (MASB), which developed

20

the evaluation instrument.

75.    The School District's Board of Education, including the School Board Defendants, was hardly able to start, much less complete, the evaluation because it had not taken the steps necessary to properly evaluate Mrs. Ahmed.

76.    Mr. Morell stated, during the October 12, 2022 meeting, that MASB's legal counsel had advised the School District's Board of Education, including the School Board Defendants, that it did not have the information necessary to complete Mrs. Ahmed's evaluation and should, instead, evaluate her replacement, Mr. Nagi.

77.    Notwithstanding Mr. Morell's advice, School Board Defendant, Mr. Major, insisted on evaluating Mrs. Ahmed.

78.    Mr. Morell started the so-called evaluation by stating that, as required by Michigan law, 40% of Mrs. Ahmed's evaluation would be based on student achievement and that Mrs. Ahmed's performance on this criterion of the evaluation was at least "effective."

79.    In response to being informed of this fact, the School District's Board of Education, including the School Board Defendants, halted the so-called evaluation.  However, Mr. Major persisted, suggesting the School District's Board of Education should do a different evaluation of Mrs. Ahmed based on her performance between July 1, 2021 to October 10, 2021, the period before she took

21

FMLA leave and before she was prevented from returning to her position after her FMLA leave.

80. Based on the October 12, 2022 meeting, including Mr. Major's comments, it is clear the so-called evaluation was a pretext for creating a document to be used in this case to counter the earlier evaluations that concluded Mrs. Ahmed was "highly effective" as the School District's Superintendent and to retaliate against her for advocating for disabled students, taking an FMLA leave, filing charges of discrimination with the EEOC and DOL, and filing this civil action.

81. Mr. Nagi, while he held the position of interim superintendent, carefully catered to preferences of the HFT and the School District Defendants, even when those preferences were illegal or not in the best interest of the School District or its students. For example, during Mr. Nagi's tenure as the School District's interim superintendent:

> A. Mr. Nagi oversaw declines in the number of Students who enrolled in or attended the School District and the deterioration of the School District's financial position;

> B. Mr. Nagi did not, or was not capable of, taking the steps necessary to secure millions of dollars in federal funding, thereby jeopardizing the School District's ability to obtain additional and much-needed resources for the School District's

students;

C.     Mr. Nagi refused to comply with federal and Michigan laws governing the education of the School District's disabled students, including but not limited to refusing to transfer properly certified teachers, leading to several informal and formal complaints against the School District that resulted in formal investigations and findings the School District had violated these federal and Michigan laws;

D.     As a result of Mr. Nagi's refusal to comply with federal and Michigan laws governing the education of the School District's disabled students a class action lawsuit was initiated by certain School District parents against the School District;

E.     When School District employees complained that Mr. Nagi was refusing to educate disabled student as required by federal and Michigan law, he illegally retaliated against them;

F.     Mr. Nagi discriminated against young females employed by the School District because, in his judgment, they should pay more attention to their families and, when they complained about his illegal discrimination against them, Mr. Nagi retaliated against them;

23

G.      When the School District's human resources professional, Mr. Elhady, attempted to investigate the complaints described in paragraph 81. F., Mr. Nagi, to prevent the investigation, attempted to direct him to stop and, when Mr. Elhady insisted on doing his job, called the police to escort Mr. Elhady off School District premises; and,

H.      Mr. Nagi's incompetent or illegal acts or omissions, as described in this paragraph, have resulted in at least seven multiple-count civil actions being filed against the School District and himself, which are now pending in the Wayne County Circuit Court.

82.      Ultimately, the School District hired an outside investigator to investigate Mr. Nagi's incompetent or illegal acts or omissions.  However, unlike Mrs. Ahmed, the School District and the School Board Defendants did not suspend Mr. Nagi pending this investigation.

83.      The disparate treatment of Mr. Nagi and Mrs. Ahmed by the School District and the School District Defendants, including the decision to leave Mr. Nagi in place notwithstanding his incompetent performance and illegal discrimination and retaliation reinforces Mrs. Ahmed's allegations of illegal discrimination on the basis of sex in violation of federal and Michigan law.

84.     In January 2023, the School District's Board of Education began to discuss reinstating Mrs. Ahmed at regularly scheduled Board meetings.  One or more members of the School District's Board of Education admitted, during one or more of these meetings, the School District had never undertaken an investigation undertaken against Mrs. Ahmed.

85.     The HFT and the AFT attempted to prevent the School District's Board of Education from reinstating Mrs. Ahmed by, among other things, packing Board meetings, protesting before, during, and after Board meetings, wearing certain colors (such as black) to Board meetings and to work, making derogatory public statements against Mrs. Ahmed, including statements to the press.  The HFT has also instructed its members to take notes whenever Mrs. Ahmed speaks to them.  HFT members have warned Mrs. Ahmed to "watch her back" and described the HFT as a "cult" rather than a union.

86.     The School District's Board of Education passed a resolution on February 22, 2023, reinstating Mrs. Ahmed as the School District's Superintendent pursuant to a contract to be negotiated between Mrs. Ahmed and the School District and approved by the School District's Board of Education.

87.     The School District's Board of Education entered into a new employment contract with Mrs. Ahmed on or about June 15, 2023.

88.     The new contract provided, among other things:

25

A. Board members would participate in monthly study sessions concerning Board governance provided by the Michigan Association of School Boards (MASB) and the Wayne County Regional Educational Services Agency (RESA) at which at least six Board members would be present; and,

B. The Superintendent would serve as the School District's Chief Executive Officer (CEO) until February 27, 2027 and have the rights and prerogatives described in paragraph 28 of this Amended Complaint.

89. The School District and the School Board Defendants have materially breach the new employment contract with Mrs. Ahmed by, among other things:

A. Not organizing or participating in the monthly study sessions concerning Board governance described in paragraph 88. A. of this Amended Complaint; and,

B. Not scheduling or participating in Board meetings necessary for Mrs. Ahmed to take the actions described in paragraph 88. B. of this Amended Complaint.

## CAUSES OF ACTION

### Count I – Violation of FMLA
**(Against the School District and the School Board Defendants)**

90. Mrs. Ahmed incorporates, by this reference, the allegations in

paragraphs 1 through 89 of this Third Amended Complaint.

91.     Mrs. Ahmed is an "eligible employee" within the meaning of the FMLA.

92.     The School Board Defendants and the School District are "employers" within the meaning of the FMLA.

93.     Mrs. Ahmed took a leave of absence for a serious health condition that made her unable to perform the functions of her position as the School District's Superintendent.

94.     Mrs. Ahmed was entitled to be restored to her position when she returned from her leave of absence.

95.     The School Board Defendants and the School District refused to restore Mrs. Ahmed to her position when she returned from her leave of absence.

96.     The School Board Defendants and the School District discriminated against Mrs. Ahmed for taking a leave of absence as described in this Third Amended Complaint, including paragraphs 57-62, 64-65, 69-79 and 86-88.

97.     The School Board Defendants and the School District retaliated against Mrs. Ahmed for taking a leave of absence as described in this Third Amended Complaint, including paragraphs 57-62, 64-65, 69-79, 86-88.

98.     Mrs. Ahmed is entitled to a declaration the School District violated the FMLA.

99.    Mrs. Ahmed is entitled to a preliminary and permanent injunction prohibiting the School District, the School Board Defendants from retaliating against her in violation of the FMLA.

100.   Mrs. Ahmed is also entitled to a reasonable attorney's fee, reasonable expert witness fees, and the other costs of this civil action.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully asks this Honorable Court to: enter a declaration the School District and the School District Defendants violated the FMLA; a preliminary and permanent injunction prohibiting the School District and the School Board Defendants from retaliating against her in violation of the FMLA; and, award her the actual attorney's fee, expert witness fees, and other costs of this civil action; and, any other relief this Court deems appropriate.

### Count II – Violation of Titles I of the ADA
### (Discrimination Against the School District)

101.   Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 100 of this Third Amended Complaint.

102.   The School District is a "covered entity" within the meaning of Title I of the Americans with Disabilities Act (ADA).

103.   Mrs. Ahmed is an "employee" within the meaning of Title I of the ADA.

104.   The School District is an "employer" within the meaning of Title I of the ADA.

105.    Mrs. Ahmed is a "qualified individual" within the meaning of Title I of the ADA.

106.    Mrs. Ahmed has a "disability" within the meaning of Title I of the ADA.

107.    Title I of the ADA prohibits a covered entity from discriminating against a qualified individual on the basis of disability with respect to discharge or other terms, conditions, and privileges of employment.

108.    Title I of the ADA requires a covered entity to provide a reasonable accommodation to a disabled employee.  A paid leave of absence is one example of such a reasonable accommodation.

109.    The School District discriminated against Mrs. Ahmed in violation of Title I of the ADA by forcing her to continue to stay on a leave of absence after she was medically released to return to work and taking the other steps described in this Third Amended Complaint her because of her disability.

110.    The School District discriminated against Mrs. Ahmed in violation of Title I of the ADA by changing the terms, conditions, and privileges of her employment as described in this Third Amended Complaint, including paragraphs 57-61, 64-65, and 69-79.

111.    The School District discriminated against Mrs. Ahmed in violation of Title I of the ADA by limiting, segregating, or classifying her in a way that

29

adversely affected her opportunities or status as an employee as described in this Third Amended Complaint, including paragraphs 57-61, 64-65, and 69-79.

112. The School District discriminated against Mrs. Ahmed in violation of Title I of the ADA by participating in a contractual or other arrangement or relationship with the HFT that subjected her to discrimination on the basis of disability as described in this Third Amended Complaint, including paragraphs 38-47, 51, 57-61, 64-65, and 69-79.

113. The School District discriminated against Mrs. Ahmed in violation of the Title I of the ADA by discriminating against her because she needed a reasonable accommodation as described in this Third Amended Complaint, including paragraphs 57-61, 64-65, and 69-79.

114. The School District discriminated against Mrs. Ahmed in violation of Title I of the ADA because she took a reasonable accommodation as described in this Third Amended Complaint, including paragraphs 57-61, 54-65, and 69-79.

115. Mrs. Ahmed suffered damages caused by the School District's illegal discrimination.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Second Amended Complaint as permitted by applicable law.

30

### Count III – Violation of Title II of the ADA
### (Discrimination Against the School District)

116. Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 115 of this Third Amended Complaint.

117. The School District is a "public entity" within the meaning of Title II of the ADA.

118. Mrs. Ahmed is a "qualified individual with a disability" within the meaning of Title II of the ADA.

119. Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability.

120. The School District illegally discriminated against Mrs. Ahmed in violation of Title II of the ADA as described in this Third Amended Complaint, including paragraphs 57-61, 64-65, 69-79, 93 -95, and 107-112.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Third Amended Complaint as permitted by applicable law.

### Count IV – Retaliation in Violation of the ADA
### (Against the School District, the School Board Defendants, and the HFT)

121. Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 120 of this Third Amended Complaint.

31

122. The School District, the School Board Defendants, and the HFT are "person(s)" within the meaning of the ADA.

123. The ADA prohibits persons from retaliating against any individual who has opposed an act that is unlawful under the ADA or who has filed a charge or participated in any manner in an investigation or proceeding under the ADA.

124. The ADA prohibits persons from coercing, intimidating, threatening, or interfering with in individual who has exercised any right under the ADA.

125. Mrs. Ahmed is an "individual" within the meaning of the ADA.

126. The School District, the School Board Defendants, and the HFT retaliated against Mrs. Ahmed for opposing an act that is unlawful under the ADA as described in this Third Amended Complaint, including paragraphs 69-79 and 84.

127. The School District, the School Board Defendants, and the HFT retaliated against Mrs. Ahmed for participating in an investigation or proceeding under the ADA as described in this Third Amended Complaint, including paragraphs 69-79 and 84.

128. The School District, the School Board Defendants, and the HFT coerced, intimidated, threatened, or interfered with Mrs. Ahmed for exercising rights under the ADA participating in an investigation or proceeding under the ADA as described in this Third Amended Complaint, including paragraphs 69-79 and 84.

129.   Mrs. Ahmed suffered damages caused by the illegal retaliation committed by the School District, the School Board Defendants, and the HFT.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Third Amended Complaint as permitted by applicable law.

### Count V – Violation of Section 504
### (Against the School District)

130.   Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 129 of this Third Amended Complaint.

131.   Mrs. Ahmed is a "qualified individual with a disability" within the meaning of Section 504 of the Rehabilitation Act of 1973 (Section 504).

132.   The School District is a "program or activity receiving Federal financial assistance" within the meaning of Section 504.

133.   Section 504 prohibits the School District from discriminating against its employees on the basis of disability.

134.   Section 504 requires the School District to reasonably accommodate disabled employees.

135.   Section 504 prohibits the School District from discriminating against disabled employees who require a reasonable accommodation.

136.   Section 504 prohibits the School District from retaliating against a

33

person who advocates for the rights of disabled persons.

137. The School District discriminated against Mrs. Ahmed on the basis of her disability as described in this Second Amended Complaint, including paragraphs 57-61, 64-65, 69-79, and 84.

138. Mrs. Ahmed suffered damages as a result of the School District's illegal discrimination.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Third Amended Complaint as permitted by applicable law.

### Count VI – Sex Discrimination in Violation of Title VII
### (Against the School District, the School Board Defendants, and the HFT)

139. Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 138 of this Third Amended Complaint.

140. Mrs. Ahmed is an "employee" within the meaning of Title VII of the Civil Rights Act of 1964 (Title VII).

141. The School District is an "employer" within the meaning of Title VII.

142. The School Board Defendants are "agents of [an employer]" within the meaning of Title VII.

143. The HFT is a "labor organization" within the meaning of Title VII.

144. The School District and the School Board Defendants discriminated

34

against Mrs. Ahmed with respect to the terms, conditions, and privileges of her employment because of her sex in violation of Title VII as described in this Third Amended Complaint, including paragraphs 15-18, 38-42, 44-48, 51, 57-67, 69-79, and 80-84.

145. The School District and the School Board Defendants discriminated against Mrs. Ahmed by adversely affecting her status as an employee because of her sex as described in this Third Amended Complaint, including paragraphs 15-18, 38-42, 44-48, 57-67, 69-79, and 80-84.

146. The HFT caused the School District and the School Board Defendants to discriminate against Mrs. Ahmed on the basis of her sex in violation of Title VII as alleged in this Third Amended Complaint, including paragraphs 15-18, 38-42, 44-48, 57-67, 69-79, and 80-84.

147. Mrs. Ahmed suffered damages as a result of the illegal discrimination committed by the School District, the School Board Defendants, and the HFT.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Third Amended Complaint as permitted by applicable law.

### Count VII – Retaliation in Violation of Title VII
### (Against the School District and School Board Defendants)

148. Mrs. Ahmed incorporates, by this reference, the allegations in

paragraphs 1 through 147 of this Third Amended Complaint.

149. The School District and the School Board Defendants illegally retaliated against Mrs. Ahmed for opposing practices made unlawful by Title VII as described in this Third Amended Complaint, including paragraphs 69-86.

150. The School District and the School Board Defendants illegally retaliated against Mrs. Ahmed for filing a charge of discrimination and filing a lawsuit alleging violations of Title VII as described in this Third Amended Complaint, including paragraphs 69-86.

151. Mrs. Ahmed suffered damages because of the illegal retaliation by the School District and the School Board Defendants.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Third Amended Complaint as permitted by applicable law.

## Count VIII – Violation of Title IX
### (Against the School District)

152. Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 151 of this Third Amended Complaint.

153. Mrs. Ahmed is a "person" within the meaning of Title IX of the Education Amendments of 1972 (Title IX).

154. The School District is a "program or activity receiving Federal

36

financial assistance" within the meaning of Title IX.

155. Title IX prohibits the School District from discriminating against Mrs. Ahmed on the basis of sex.

156. The School District discriminated against Mrs. Ahmed on the basis of sex in violation of Title IX as described in this Third Amended Complaint, including paragraphs 15-18, 38-42, 44-48, 51, 57-67, and 69-84.

157. Mrs. Ahmed suffered damages because the School District discriminated against her on the basis of sex.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Third Amended Complaint as permitted by applicable law.

### Count IX – Violation of Due Process Clause (Section 1983)
### (Against the School District and the School Board Defendants)

158. Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 157 of this Third Amended Complaint.

159. The Fourteenth Amendment of the Constitution of the United States prohibits the School District and the School Board Defendants from depriving Mrs. Ahmed of her property without due process of law (the Due Process Clause).

160. The Due Process Clause is enforceable through 42 U.S.C. § 1983.

161. Mrs. Ahmed had a property interest in her employment contract with

the School District.

162. Mrs. Ahmed's property interest in her employment contract with the School District included the School District obligation to comply with the terms and conditions of that contract described in paragraphs 28 and 87.

163. The School District and the School Board Defendants deprived Mrs. Ahmed of her property interest in the terms and conditions of her employment contract as described in this Third Amended Complaint, including paragraphs 40-43, 51, 57-62, 64-67, 69-79, and 83.

164. The School District and the School Board Defendants deprived Mrs. Ahmed of her property interest in her employment contract without due process of law as described in this Third Amended Complaint, including paragraphs 40-43, 51, 57-62, 64-67, 69-79 and 83.

165. Mrs. Ahmed had a property interest in her reputation.

166. The School District and the School Board Defendants deprived Mrs. Ahmed of her property interest in her reputation without due process of law as described in this Third Amended Complaint, including paragraphs 38-48, 57-62, 64-65, 67, 69-79, and 83-84.

167. The School District and the School Board Defendants did not provide Mrs. Ahmed with notice or an opportunity to be heard before depriving her of her property interest in her employment contract.

38

168.    The School District and the School Board Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

169.    The School District and the School Board Defendants were acting under color of Michigan law.

170.    Mrs. Ahmed suffered damages caused by the violation of the Due Process Clause by the School District and the School Board Defendants.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Third Amended Complaint as permitted by applicable law.

### Count X – Conspiracy to Deprive Plaintiff of Civil Rights (Section 1985) (Against the School District, the School Board Defendants, and HFT)

171.    Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 170 of this Third Amended Complaint.

172.    The School District, the School Board Defendants, and the HFT are "persons" within the meaning of 42 U.S.C. § 1985.

173.    The School District, the School Board Defendants, and the HFT conspired to deprive Mrs. Ahmed of her property interest in her employment contract in violation of 42 U.S.C. § 1985(3) as described in this Third Amended Complaint, including paragraphs 40-43, 51, 57-62, 64-67, 69-79, 83, and 87-88.

174.    The School District, the School Board Defendants, and the HFT

conspired to deprive Mrs. Ahmed of her property interest in her reputation in violation of 42 U.S.C. § 1985(3) as described in this Third Amended Complaint, including paragraphs 38-48, 57-62, 64-65, 69-79, and 83-84.

175.   Mrs. Ahmed suffered damages because of this conspiracy.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Third Amended Complaint as permitted by applicable law.

**Count XI – Violation of Due Process Clause of Michigan Constitution**
**(Against the School District and the School District Defendants)**

176.   Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 175 of this Third Amended Complaint.

177.   The Constitution of the State of Michigan provides that "no person shall ... be deprived of ... property without due process of law." The Constitution of the State of Michigan further provides that "[t]he right of all individuals ... to fair and just treatment in the course of legislative and executive investigations ... shall not be infringed." Mich. Const., Art. 1, § 17.

178.   Mrs. Ahmed had a property interest in her employment contract with the School District.

179.   Mrs. Ahmed's property interest in her employment contract with the School District included the School District obligation to comply with the terms

and conditions of that contract that are described in paragraph 28 and 87.

180. The School District and the School Board Defendants deprived Mrs. Ahmed of her property interest in the terms and conditions of her employment contract as described in this Third Amended Complaint, including paragraphs 40-43, 51, 57-62, 64-67, 69-79, 83, and 87-88.

181. The School District and the School Board Defendants deprived Mrs. Ahmed of her property interest in her employment contract without due process of law as described in this Third Amended Complaint, including paragraphs 40-43, 51, 57-62, 64-67, 69-79, 83-84, and 87-88.

182. Mrs. Ahmed had a property interest in her reputation.

183. The School District and the School Board Defendants deprived Mrs. Ahmed of her property interest in her reputation without due process of law as described in this Third Amended Complaint, including paragraphs 38-48, 57-62, 64-65, 67, 69-79, and 83-84.

184. The School District and the School Board Defendants did not provide Mrs. Ahmed with notice or an opportunity to be heard before depriving her of her property interest in her employment contract and her reputation.

185. Mrs. Ahmed suffered damages caused by the violation of the Due Process Clause by the School District and the School Board Defendants.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this

41

Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Third Amended Complaint as permitted by applicable law.

### Count XII – Violation of PWDCRA (Discrimination)
### (Against School District, School Board Defendants, and HFT)

186. Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 185 of this Third Amended Complaint.

187. Mrs. Ahmed, the School District, the School Board Defendants, and the HFT are "persons" within the meaning of Michigan's Persons with Disabilities Civil Rights Act (PWDCRA).

188. Mrs. Ahmed is an "individual" within the meaning of the PWDCRA.

189. Mrs. Ahmed is an "employee" within the meaning of the PWDCRA.

190. The School District is an "employer" within the meaning of the PWDCRA.

191. The School District is an "educational institution" within the meaning of the PWDCRA.

192. The School Board Defendants are "employer(s)" within the meaning of the PWDCRA.

193. The HFT is a "labor organization" within the meaning of the PWDCRA.

194. The School District and the School Board Defendants discriminated

42

against Mrs. Ahmed with respect to the terms, conditions, and privileges of employment because of a disability unrelated to her ability to perform the duties of her job in violation of the PWDCRA as described in this Third Amended Complaint, including paragraphs 57-61, 64-65, and 69-79.

195. The School District and the School Board Defendants adversely affected Mrs. Ahmed status as a School District employee because of a disability unrelated to her ability to perform the duties of her job in violation of the PWDCRA as described in this Third Amended Complaint, including paragraphs 57-61, 64-65, and 69-79.

196. The School District and the School Board Defendants took discriminatory action against Mrs. Ahmed unrelated to her ability to perform the duties of her job in violation of the PWDCRA as described in this Third Amended Complaint, including paragraphs 57-61, 64-65, and 69-79.

197. The HFT caused or attempted to cause the School District and the School Board Defendants to violate the PWDCRA as described in this Third Amended Complaint, including paragraphs 57-61, 64-65, 69-79, and 84.

198. Mrs. Ahmed suffered damages because of these violations of the PWDCRA.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief

Requested section of this Third Amended Complaint as permitted by applicable law.

<b>Count XIII - Violation of PWDCRA (Retaliation)<br>(Against School District, School Board Defendants, and HFT)</b>

199. Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 198 of this Third Amended Complaint.

200. The School District, the School Board Defendants, and the HFT retaliated and discriminated against Mrs. Ahmed in violation of the PWDCRA because she opposed a violation of the PWDCRA as described in this Third Amended Complaint, including paragraphs 69-79 and 84.

201. The School District, the School Board Defendants, and the HFT retaliated or discriminated against Mrs. Ahmed because she filed a civil action under the PWDCRA as described in this Third Amended Complaint, including paragraphs 69-79 and 84.

202. The School District, the School Board Defendants, and the HFT attempted, directly or indirectly, to commit acts prohibited by the PWDCRA as described in this Third Amended Complaint, including paragraphs 57-61, 64-65, 69-79, and 84.

203. The School Board Defendants and the HFT willfully obstructed or prevented the School District from complying with the PWDCRA as described in this Third Amended Complaint, including paragraphs 57-61, 64-65, 69-79, and 84.

204. The HFT aided, abetted, incited, compelled, or coerced the School District and the School Board Defendants to engage in a violation of the PWDCRA as alleged in this Third Amended Complaint, including paragraphs 57-61, 64-65, 69-79, and 84.

205. Mrs. Ahmed suffered damages caused by the violations of the PWDCRA alleged in this Count.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Third Amended Complaint as permitted by applicable law.

### Count XIV – Violation of the ELCRA (Discrimination)
### (Against the School District, the School Board Defendants, and the HFT)

206. Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 205 of this Third Amended Complaint.

207. Mrs. Ahmed, the School District, the School Board Defendants, and the HFT are "persons" within the meaning of Michigan's Elliott-Larsen Civil Rights Act (ELCRA).

207. The School District is an "employer" within the meaning of the ELCRA.

209. The School District is an "educational institution" within the meaning of the ELCRA.

45

210. The School Board Defendants are "employer(s)" within the meaning of the ELCRA.

211. The HFT is a "labor organization" within the meaning of the ELCRA.

212. The School District and the School Board Defendants discriminated against Mrs. Ahmed with respect to the terms, conditions, and privileges of employment because of sex in violation of the ELCRA as described in this Third Amended Complaint, including paragraphs 15-18, 38-48, 44-48, 51, 57-67, 69-79, 80-84, and 87-88.

213. The HFT caused or attempted to cause the School District and the School Board Defendants to violate the ELCRA as described in this Third Amended Complaint, including paragraphs 15-18, 38-48, 44-48, 57-67, and 69-79, and 80-84.

214. Mrs. Ahmed suffered damages because of these violations of the PWDCRA.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Third Amended Complaint as permitted by applicable law.

**Count XV - Violation of ELCRA (Retaliation)**
**(Against School District, School Board Defendants, and HFT)**

215. Mrs. Ahmed incorporates, by this reference, the allegations in

46

paragraphs 1 through 214 of this Third Amended Complaint.

216. The School District, the School Board Defendants, and the HFT retaliated and discriminated against Mrs. Ahmed in violation of the ELCRA because she opposed a violation of the ELCRA as described in this Third Amended Complaint, including paragraphs 69-88.

217. The School District, the School Board Defendants, and the HFT retaliated or discriminated against Mrs. Ahmed because she filed a civil action under the ELCRA as described in this Third Amended Complaint, including paragraphs 69-88.

218. The School District, the School Board Defendants, and the HFT attempted, directly or indirectly, to commit acts prohibited by the ELCRA as described in this Third Amended Complaint, including paragraphs 15-18, 57-67, 69-79 and 84.

219. The School Board Defendants and the HFT willfully obstructed or prevented the School District from complying with the ELCRA as described in this Third Amended Complaint, including paragraphs 15-18, 57-67, 69-79 and 84.

220. The HFT aided, abetted, incited, compelled, or coerced the School District and the School Board Defendants to engage in a violation of the ELCRA as alleged in this Third Amended Complaint, including paragraphs 15-18, 57-67, 69-79, and 84.

221.    Mrs. Ahmed suffered damages caused by the violations of the ELCRA alleged in this Count.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Third Amended Complaint as permitted by applicable law.

### Count XVI – Intentional Interference with Contractual Relations
### (Against the School Board Defendants and the HFT)

222.    Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 221 of this Third Amended Complaint.

223.    Mrs. Ahmed and the School District were parties to an employment contract that included the provisions set forth in paragraphs 28 and 87 of this Second Amended Complaint.

224.    The School Board Defendants, and the HFT were aware of this employment contract.

225.    The School Board Defendants and the HFT intentionally and improperly interfered with this employment contract in the manner described in this Third Amended Complaint, including paragraphs 32-33, 38-49, 51-53, 57-62, 64-65, and 69-88.

226.    This intentional and improper interference caused the School District to breach the contract.

48

227. Mrs. Ahmed suffered damages caused by the School Board Defendants' and the HFT's intentional and improper interference with her employment contract.

228. The School Board Defendants cannot invoke the defense of governmental immunity to insulate themselves from liability for this intentional tort.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Third Amended Complaint as permitted by applicable law.

### Count XVII – Defamation and Defamation *Per Se*

229. Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 228 of this Third Amended Complaint.

230. The School Board Defendants, the HFT, and the HFT members named in paragraph 46 published the materially and objective false statements about Mrs. Ahmed described in this Third Amended Complaint, including paragraphs 44-48, 57-58, 60, 64-65, 69, and 71.

231. These materially and objectively false statements damaged Mrs. Ahmed's reputation.

232. These materially and objectively false statements damaged Mrs.

49

Ahmed's professional reputation and were defamatory *per se*.

233. The defamatory statements were re-published by local, regional, and state-wide news media.

234. These defamatory statements were published with bad faith or ill will.

235. These defamatory statements were published with malice and reckless disregard for whether they were true.

236. The malice underlying the publication of these defamatory statements is evidenced by: their publication to achieve the ulterior goal of changing the terms and condition of employment for HFT's members; their publication to secure an illegal term and condition of employment (i.e., the end of involuntarily teacher transfers); their publication by individual who were not in a position to know the facts first-hand and who made no effort to do so; and, their uniformity, suggesting they were based on a script or model provided by the HFT.

237. The School Board Defendants cannot invoke governmental immunity as a defense to insulate themselves from liability for an intentional tort.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Third Amended Complaint as permitted by applicable law.

**Count XVIII – Invasion of Privacy - False Lights**
**(Against the School Board Defendants and the HFT)**

238. Mrs. Ahmed incorporates, by this reference, the allegations of paragraphs 1 through 237 of this Third Amended Complaint.

239. The School Board Defendants, the HFT, and HFT members published the statements referenced in this Third Amended Complaint, including paragraphs 44-48, 57-58, 60, 64-65, 69, and 71.

240. These statements were highly objectionable to Mrs. Ahmed and would be highly objectionable to any reasonable person.

241. These statements attributed to Mrs. Ahmed characteristics and conduct that were false and placed her in a false light.

242. The School Board Defendants, the HFT, and the HFT members who made these statements knew they were false or acted in reckless disregard as to whether they were false.

243. The School Board Defendants, the HFT, and the HFT members who made these statements knew they would place Mrs. Ahmed in a false light in the public eye.

244. The School Board Defendants, the HFT, and the HFT members published these statements to a large number of people or the general public.

245. These statements were published with malice and reckless disregard for whether they were true.

51

246. The malice underlying the publication of these defamatory statements is evidenced by: their publication to achieve the ulterior goal of changing the terms and condition of employment for HFT's members; their publication to secure an illegal term and condition of employment (i.e., the end of involuntarily teacher transfers); their publication by individual who were not in a position to know the facts first-hand and who made no effort to do so; and, their uniformity, suggesting they were based on a script or model provided by the HFT.

247. The School Board Defendants cannot invoke governmental immunity as a defense to insulate themselves from liability for an intentional tort.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Third Amended Complaint as permitted by applicable law.

## Count XIX – Conspiracy
### (Against the School Board Defendants and the HFT)

248. Mrs. Ahmed incorporates, by this reference, the allegations in paragraphs 1 through 247 of this Third Amended Complaint.

249. A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish an unlawful purpose or a lawful purpose by unlawful means.

250. A plaintiff alleging a civil conspiracy is not required to provide direct

52

proof of a formal or informal agreement between or among the conspirators. It is sufficient if the circumstances, acts, and conduct of the conspirators establishes an agreement in fact.

251. A civil conspiracy may be established by circumstantial evidence and may be based on inference.

252. The School Board Defendants and the HFT combined to accomplish the unlawful purposes of: interfering with Mrs. Ahmed's contractual right to determine who would serve as central office administrators, interfering with her contractual right to work as Superintendent, and preventing her from involuntarily transferring teachers; illegally discriminating against her on the basis of disability and sex; illegally retaliating against her for advocating on behalf of disabled students, requesting and taking a reasonable accommodation, requesting and taking an FMLA leave, filing charges of discrimination and a civil action; and, illegally interfering with her property rights in violation of the Due Process Clauses of the federal and Michigan constitutions and 42 U.S.C. § 1985(3).

253. Even assuming the purposes mentioned in paragraph 251 are not unlawful, *per se*, the School Board Defendants and the HFT combined to violate Mrs. Ahmed's constitutional, statutory, and common law rights in the many ways alleged in this Third Amended Complaint.

254. The combination of the School Board Defendants and the HFT and its

members is established, or may be inferred, from their own statements as described in this Third Amended Complaint, including paragraphs 38-39 and 42-44.

255. The combination of the School Board Defendants and the HFT and its members is also established, or may be inferred, by the facts described in this Third Amended Complaint, including paragraphs 40-41, 45-47, 51, 57-62, 64-66, and 69-79.

256. The School Board Defendants and the HFT, as parties to a civil conspiracy, are jointly and severally liable for their own wrongful acts and the wrongful acts of the other conspirators.

WHEREFORE, Plaintiff, Jaleelah Ahmed, respectfully requests this Honorable Court award her the legal and equitable relief set forth in the Relief Requested section of this Third Amended Complaint as permitted by applicable law.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, Mrs. Jaleelah Ahmed, respectfully asks this Honorable Court to award her the following preliminary and permanent relief:

A. A declaration Defendants violated the FMLA, Titles I and II of the ADA, Section 504, The Due Process Clauses of the federal and Michigan constitutions, 42 U.S.C. § 1985(3), the PWDCRA, and the ELCRA as alleged in this Third Amended Complaint.

54

B.  A preliminary and permanent injunction prohibiting the School District and the School Board Defendants from retaliating against her in violation of the FMLA.

C.  A preliminary and permanent injunction prohibiting the School District and the School Board Defendants from terminating Plaintiff's employment as Superintendent of the School District in violation of her employment contract, in violation of the constitutions and laws of the United States and the State of Michigan, and otherwise violating her employment contract.

D.  A preliminary and permanent injunction prohibiting Defendants from interfering with Plaintiff's performance of the duties of the Superintendent of the Hamtramck Schools.

E.  Damages for the sick and vacation days Plaintiff used during her FMLA leave;

F.  Damages for mental anguish, emotional distress, pain and suffering, and loss of enjoyment of life in the maximum amount permitted by law.

G.  Damages for harm to Plaintiff's professional reputation and future employability.

H.  Fifteen percent of Plaintiff's base salary, which increase was awarded

55

to all School District administers in June 2022.

I.     Exemplary damages.

J.     Punitive damages.

J.     Statutory attorneys' fees and costs.

K.     Actual reasonable attorneys' fees and costs.

L.     Whatever other relief this Court deems appropriate.

Respectfully submitted,

EDUCATORS LEGAL SERVICES, PLLC

*/s/ Robert A. Lusk* (P38122)
9070 Campbell Creek Drive
Commerce Township, Michigan 48390
(248) 301-1944
rlusk@educatorslegalservices.com