## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JALEELAH AHMED,

       *Plaintiff*,

       v.

SCHOOL DISTRICT OF THE CITY OF
HAMTRAMCK, *et al.*,

       *Defendants*.

_____/

Case No. 2:22-cv-11127

District Judge
Gershwin A. Drain

Magistrate Judge
Curtis Ivy, Jr.

## ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT [#69]

Before the Court is a Motion for Leave to File an Amended Complaint brought by Plaintiff Jaleelah Ahmed ("Plaintiff"). ECF No. 69. The Hamtramck Federation of Teachers (the "HFT") filed its Response on January 11, 2024 contesting the Motion. ECF No. 71.[1] On January 12, 2024, the School District of the City of Hamtramck (the "School District"), Evan Major, Salah Hadwan, Moortadha Obaid, Showcat Chowdhury, and Regan Watson (the "School Board Defendants") (collectively, "the School District Defendants") also filed its Response in opposition. ECF No. 72. Plaintiff has filed Replies to both sets of Defendants, so the Motion is

---

[1] As it does not appear that HFT has complied with this rule, the Court reminds HFT that the "type size of all text and footnotes must be no smaller than 10-1/2 characters per inch (non-proportional) or 14 point (proportional)." E.D. Mich. LR 5.1(a)(3). The Court will reject future filings that ignore these parameters.

now fully briefed. ECF Nos. 73, 74.

Upon review of the parties' submissions, the Court finds that oral argument will not aid in the disposition of this matter and will resolve Plaintiff's Motion on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons stated herein, Plaintiff's Motion will be denied.

## I.    BACKGROUND

### A.    Facts

Plaintiff became Superintendent of Schools for the Hamtramck School District in 2019. ECF No. 1, PageID.5 ¶ 19. After two years of receiving only positive evaluations, she signed a renewed three-year employment contract with the School District in 2021. *Id.* at ¶ 20. The new agreement dictated that Plaintiff would remain Superintendent from July 1, 2021 to July 30, 2024, during which time she could organize, reorganize, and arrange departments and staff in a manner that best served the school district. *Id.* at ¶ 21.

Plaintiff utilized this authority in August 2021 when she involuntarily transferred nine teachers in Hamtramck Schools to "improve the educational opportunities of Hamtramck Schools' students." *Id.* at PageID.6 ¶ 25. A popular teacher in the district resigned shortly after in response to legal action initiated by the School District. *Id.* at ¶ 26. Because of these sudden personnel moves, the School District Defendants and the HFT allegedly demanded that Plaintiff fire the Executive

Director of Human Resources, Michelle Imbrunone, who had been delegated the responsibility for these decisions. *Id.* at ¶ 27. Plaintiff involuntarily transferred two more teachers in September 2021 because of a larger-than-expected enrollment of autistic students that school year. *Id.* at PageID.7 ¶¶ 29–30. Even though Plaintiff assertedly made these moves to comply with Federal and Michigan law, the School District and the School Board Defendants refused to permit the involuntary transfers. *Id.* at ¶ 30.

Plaintiff alleges that this conflict led some teachers to work in concert with Defendants to terminate her employment and that of Imbrunone. *Id.* at PageID.8 ¶ 36. The concerted acts allegedly included posting disparaging information about Plaintiff on the Teachers Union's Facebook account, providing information to local news outlets, repeatedly appearing in Plaintiff's office to threaten her employment, and terminating Imbrunone's employment entirely. *Id.* at PageID.8–11 ¶ 37. Plaintiff experienced severe stress due to these events, which caused her to take physician-recommended medical leave for three months. *Id.* at PageID.11 ¶¶ 38–40.

After Plaintiff began her medical leave on October 10, 2021, the School District informed her via letter that two acting Superintendents would be operating in her absence, meaning that she was not authorized to operate in an official capacity until her return. *Id.* at ¶¶ 40–41. When she notified the School District that she would be returning from her leave of absence on January 3, 2022, Plaintiff learned that she

3

was involuntarily placed on administrative leave pending an investigation into alleged misconduct. *Id.* at PageID.13 ¶¶ 42–43. She was not permitted to return to work until the investigation concluded. *Id.* at ¶ 43.

## B.    Procedural Posture

Plaintiff filed her original Complaint on May 23, 2022, bringing thirteen causes of action. ECF No. 1. She asserts claims for race, sex, national origin, and disability discrimination under the Americans with Disabilities Act; the Rehabilitation Act; Michigan's Persons with Disabilities Civil Rights Act; Title VII of the Civil Rights Act of 1964; Michigan's Elliot–Larsen Civil Rights Act. ECF No. 1. Plaintiff also brings claims for intentional interference with contractual relations, defamation, and violations of her Due Process rights under the United States and Michigan Constitutions. *Id.* She seeks monetary damages and an injunction prohibiting Defendants from interfering with the performance of her duties as Superintendent. *Id.* at PageID.37.

After Defendants filed two motions to dismiss the Original Complaint (ECF Nos. 4, 19), Plaintiff filed two motions to amend her complaint. ECF Nos. 15, 37. The first Motion to Amend, filed August 15, 2022, was intended to remedy Defendants' argument that the Original Complaint was insufficiently specific. ECF No. 15. Magistrate Judge Ivy denied Plaintiff's motion as futile on October 6, 2022. ECF No. 30. Plaintiff filed her Second Motion to Amend on November 21, 2022,

adding five causes of action. ECF No. 37. While the motion was pending, the Court held a status conference on March 16, 2023. At the conference, the parties shared that Plaintiff had been reinstated to her Superintendent position. Because of this change in circumstances, the Court instructed the parties to withdraw their pending motions and instructed Plaintiff to file an amended complaint that reflected the changed facts. Plaintiff filed her Third Amended Complaint on March 23, 2023. ECF No. 55. In the newest pleading, she maintained all her original claims and added five causes of action not asserted in the Original Complaint. ECF No. 55. She withdrew her Second Motion to Amend on March 24, 2023. ECF No. 56.

Defendants filed a Motion to Strike Plaintiff's Third Amended Complaint on April 6, 2023. ECF No. 58. They argued that the pleading should be struck because Plaintiff filed it without consent or leave and because Plaintiff improperly expanded her claims for relief. *Id.* at PageID.1498–99. The Court agreed that Plaintiff improperly added claims for relief without seeking leave or consent and granted Defendants' Motion on November 30, 2023. ECF No. 67. The Court ordered Plaintiff to file another amended complaint and required her to either seek leave or consent if she wished to add causes of action not alleged in the Original Complaint. ECF No. 67, PageID.1803.

The Court now considers Plaintiff's most recent Motion for Leave to File Amended Complaint. ECF No. 69. Separately, Plaintiff has filed her Proposed

Fourth Amended Complaint ("Proposed Amendment") for the Court's consideration. ECF No. 68. With this Proposed Amendment, Plaintiff seeks to remove two Counts from the Original Complaint and add five, citing factual developments in the case. *Id.* at PageID.1863–64. In each of Defendant's Responses, they ask this Court to deny Plaintiff's Motion as futile and to bar any additional causes of action. ECF Nos. 71, 72.

## II.   LEGAL STANDARD

Under Rule 15 of the Federal Rules of Civil Procedure, the Court should "freely" give leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, before ruling on a motion to amend, the court considers "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). A proposed amendment is futile if the complaint, as amended, would not withstand a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). Accordingly, the Court assesses futility under the same standard applied to a 12(b)(6) motion to dismiss. *Est. of Moore v. City of Warren*, No. 21-12267, 2023 U.S. Dist. LEXIS 235018, at *7 (E.D. Mich. Apr. 27, 2023).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a

complaint. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint is not required to contain detailed allegations, "however it must assert sufficient facts to provide the defendant with 'fair notice of what the claim is and the ground upon which it rests.'" *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 424 (6th Cir. 2013) (quoting *Twombly*, 550 U.S. at 555) (cleaned up)).

## III.   DISCUSSION

Along with certain miscellaneous changes, Plaintiff seeks to assert the following new claims: Count I–Violation of the Family Medical Leave Act; Count VIII–Violation of Title IX; Count X–Conspiracy to Deprive Plaintiff of Civil Rights; Count XVIII–Invasion of Privacy/False Lights; Count XIX–Conspiracy. ECF No. 69, PageID.1865; *see* ECF Nos. 1, 68. Plaintiff also seeks to drop the original Count VIII–Violation of Title VII (National Origin Discrimination) and Count IX–Violation of Michigan's Elliot-Larsen Civil Rights Act (National Origin Discrimination). *Id.* The Court takes Plaintiff's proposed additions in turn below.

**A.    Count I – Violations of the FMLA**

In Count I, Plaintiff asserts that the School District discriminated and/or retaliated against her for taking a leave of absence in violation of the FMLA. ECF No. 68, PageID.1831 ¶¶ 96, 97. Specifically, she claims that "the School District Defendants violated the FMLA by refusing to permit her to return to work from her FMLA leave after her doctor released her to return to work in December 2021." ECF No. 69, PageID.1872.

Under the FMLA, qualifying employees may take up to twelve weeks of unpaid leave each year "if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Edgar v. JAC Prods.*, 443 F.3d 501, 506 (6th Cir. 2006) (quoting 29 U.S.C. § 2612(a)(1)(D)). A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id.* (quoting 29 U.S.C. § 2611(11)). An employer may not interfere with an employee's FMLA rights or discriminate against an employee for the exercise thereof. 29 U.S.C. § 2615(a).

To bring a *prima facie* case under the FMLA for discrimination or retaliation, a plaintiff must show that "(1) they are engaging in an activity protected by the FMLA; (2) the employer knew that they were exercising their rights under the

FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to them; and (4) a [causal] connection exists between the protected FMLA activity and the adverse employment action." *Nieves v. Envoy Air, Inc.*, 760 F. App'x 421, 426-27 (6th Cir. 2019) (citing *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)); *see Curry v. Brown*, 607 F. App'x 519, 525 (6th Cir. 2015). In instances of alleged retaliation, "what makes the employment decision unlawful . . . is the motive of the employer—namely, that the action was taken *because* the employee exercised, or complained about the denial of, FMLA-protected rights." *Nieves*, 760 F. App'x at 427 (quoting *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 512 (6th Cir. 2006)).

Where, as here, a plaintiff relies on indirect evidence to support her discrimination claim, the Court analyzes the claim under the three-step process outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). According to this framework, the plaintiff must first establish a prima facie case of discrimination and/or retaliation. Second, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. *Id.* at 802–803. Finally, if the employer satisfies its burden, the plaintiff must then produce evidence suggesting that the non-discriminatory reason was pretextual. *Nieves*, 760 F. App'x at 427. When determining whether a plaintiff has successfully made a prima facie case of discrimination, the Court does not consider the alleged

non-discriminatory reasons for taking an adverse employment action. "To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the non-discriminatory reason was in actuality a pretext designed to mask discrimination." *Shrivastava v. RBS Citizens Bank, N.A.*, 227 F. Supp. 3d 824, 833 (E.D. Mich. 2017) (citation omitted).

### i.   Adverse Employment Action

The School District Defendants do not dispute that Plaintiff satisfies the first and second prongs of her prima facie case. Thus, as alleged in the Proposed Amendment, Plaintiff engaged in FMLA protected activity when she took physician-advised medical leave "for the sake of her health." ECF No. 68, PageID.1818 ¶¶ 54, 55. Plaintiff also sufficiently alleges that the School District Defendants knew she was exercising her FMLA rights by stating that she notified the School District's Board of Education of her impending leave and received a letter in return with instructions regarding her absence. *Id.* at PageID.1818–1819 ¶¶ 55, 57.

The parties dispute the third and fourth prongs. The School District Defendants contend that "Plaintiff's FMLA claim fails as a matter of law because she has not suffered an adverse action." ECF No. 72, PageID.2055. They contend that the alleged employment actions that Plaintiff faced—being placed on administrative leave during a misconduct investigation, being informed of a planned performance evaluation—do not constitute adverse employment actions under the

10

law. *Id.* Plaintiff contends in response that the "adverse employment action" doctrine has been "explicitly abandoned in the Sixth Circuit," directing the Court to their prior citation to *Threat v. City of Cleveland*, 6 F.4th 672 (6th Cir. 2021). ECF No. 73, PageID.2201.

Contrary to Plaintiff's assertions, the Sixth Circuit in *Threat* did not "explicitly abandon" the requirement that a Plaintiff show a materially adverse employment action in a discrimination case. To the contrary, the appellate court clarified that "an employer's alteration of the 'terms' or 'privileges' of an employee's work is actionable **only** when it is 'adverse' and 'material' to the work." *Threat*, 6 F.4th at 678 (emphasis added). As the Court made clear, the adverse employment action requirement is important because it "ensures that a discrimination claim involves a meaningful difference in the terms of employment and one that injures the affected employee." *Id.* Thus, in accordance with the long-held doctrine in this Circuit, Plaintiff will not successfully maintain an FMLA discrimination claim if she cannot show that she suffered an adverse employment action.

To that end, Plaintiff states that the violation occurred when she was prevented from returning to work once her FMLA leave ended. ECF No. 69, PageID.1872. But the allegations offer more detail. According to the Proposed Amendment, Plaintiff was placed on paid administrative leave under the guise of an active investigation

into misconduct. ECF No. 68, PageID.1821 ¶ 64. In the Sixth Circuit, it is uncontroversial that "employers are permitted to investigate their employees for wrongdoing, including wrongdoing related to protected leave." *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 631 (6th Cir. 2018). Under this logic, the Sixth Circuit has repeatedly held that, without more, forced paid administrative leave pending an investigation into misconduct is not a materially adverse employment action. *Ehrlich v. Kovack*, 710 F. App'x 646, 650 (6th Cir. 2017) ("[B]eing placed on paid administrative leave while an investigation is conducted into suspected wrongdoing is not an adverse action."); *Dendinger v. Ohio*, 207 F. App'x 521, 527 (6th Cir. 2006) ("neither an internal investigation into suspected wrongdoing by an employee nor that employee's placement on paid administrative leave pending the outcome of such an investigation constitutes an adverse employment action.") (citing *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004)).

The settled law would generally resolve this question in favor of the School District Defendants. However, Plaintiff alleges that "members of the School District's Board of Education admitted, during one or more of these meetings, the School District had never undertaken an investigation [] against Mrs. Ahmed." ECF No. 68, PageID.1829 ¶ 84. She further alleges that she "was not notified of the alleged misconduct" and "did not have an opportunity to respond to the allegations against her," further suggesting that no such investigation occurred. *Id.* at

12

PageID.1822 ¶ 66. These allegations, taken as true, overcome the general rule that paid administrative leave is not materially adverse to an employee. Such a rule cannot control where no investigation took place.

Thus, the Court finds that Plaintiff sufficiently alleges an adverse employment action.

### ii.    Causation

To satisfy the fourth element, Plaintiff must show that "a [causal] connection exists between the protected FMLA activity and the adverse employment action." *Nieves*, 760 F. App'x at 426-27. For the Court to find a causal connection, there must be evidence permitting an inference that the adverse action would not have been taken had Plaintiff not engaged in protected FMLA activity. *Hood v. City of Memphis Pub. Works Div.*, No. 21-5372, 2023 U.S. App. LEXIS 3318, at *13 (6th Cir. Feb. 10, 2023) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

Plaintiff offers little support for the proposition that she was placed on paid administrative leave because she exercised her FMLA rights. In the Proposed Amendment, she states that on December 29, 2021, she was informed that she was prohibited from returning to work once her leave ended and that she would be under investigation. ECF No. 68, PageID.1821 ¶ 64. In subsequent paragraphs, Plaintiff alleges that the School District Defendants publicly announced the investigation,

removed her personal effects from her office, publicly complained about her actions as Superintendent, and initiated a performance evaluation, all "in retaliation for . . . taking FMLA leave[.]" *Id.* at PageID.1822–24 ¶¶ 69–71, 73. These are not facts showing a connection between Plaintiff's FMLA leave and her adverse employment action. Claims that certain actions were "in retaliation for taking FMLA leave" are merely conclusory allegations insufficient to establish causation. *Giles v. Norman Noble, Inc.*, 88 F. App'x 890, 895 (6th Cir. 2004) ("Rumors, conclusory allegations and subjective beliefs … are wholly insufficient evidence to establish a claim of discrimination as a matter of law.").

Moreover, the Proposed Amendment suggests that her employer was disgruntled for reasons other than her FMLA leave. According to Plaintiff, the reason she took leave in the first place was because of the stress she endured after facing backlash for involuntarily transferring teachers  and "oppos[ing] the School District's refusal to provide the disabled students with properly certified teachers." ECF No. 68, PageID.1818 ¶ 52. These involuntary transfers caused significant tension in the School District. In fact, Plaintiff alleges that before she ever took leave Defendants threatened to "remove her from her position as School District Superintendent" if she refused to cooperate with their demands. *Id.* at PageID.1813 ¶ 40. Based on these facts, Plaintiff cannot establish a causal connection between her FMLA leave and being placed on paid administrative leave.

Lastly, Plaintiff fails to show she was treated differently than someone similarly situated. To decide whether an employee is similarly situated to Plaintiff, the Court considers whether the comparator "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Santiago v. Meyer Tool Inc.*, No. 22-3800, 2023 U.S. App. LEXIS 14469, at *19-20 (6th Cir. June 8, 2023).

Plaintiff's Proposed Amendment first identifies a Mr. Thomas Niczay, who served as superintendent prior to Plaintiff. ECF No. 68, PageID.1808. She alleges that he is a white male who involuntarily transferred several teachers in 2018 but did not face repercussions from any Defendant. *Id* at ¶¶ 15–18. Yet, Plaintiff's own allegations demonstrate why the two are not similarly situated. First, Plaintiff notes that she took over as Superintendent in 2019 and was employed at the outset of the COVID-19 pandemic, which began in 2020. *Id.* at PageID.1811 ¶ 29. The Proposed Amendment demonstrates that, unlike Niczay, Plaintiff involuntarily transferred teachers amidst an increase in vacant positions caused by "[s]tressors related to fear of contagion, school closures, and virtual instruction." *Id.* at ¶ 30, 37. Further, unlike in Niczay's case, Plaintiff involuntarily transferred teachers while facing pressure from the teachers union and the school board to end the practice. *Id.* at PageID.1811–12 ¶ 33, 37–42. This pressure, according to the Proposed Amendment, was in

response to unexpected resignations brought by the pandemic, not in response to Plaintiff. *See* ECF No. 68, PageID.1811–12 ¶ 32 –33. There is no allegation that Niczay operated under the same or even similar conditions. Thus, even though Plaintiff and her comparator may have taken the same actions, these actions were taken in vastly different conditions that explain the differential treatment. The above facts constitute "differentiating or mitigating circumstances that would distinguish" Plaintiff from Niczay and show that he is not similarly situated.

Plaintiff also highlights as a comparator Mr. Nabil Nagi, one of the interim superintendents during her leave. She states that, unlike her, he was not forced to take administrative leave during an investigation into his potential misconduct. However, Nagi is not a valid comparator. According to Plaintiff, when Nagi took over, he "carefully catered to preferences of the HFT and the School District Defendants, even when those preferences were illegal or not in the best interest of the School District or its students." ECF No. 68, PageID.1826 ¶ 81. Plaintiff's refusal to cooperate with Defendants' requests was the central conflict during her tenure. Thus, the fact that the School District Defendants "did not suspend Mr. Nagi" during the investigation into his conduct" is not dispositive, as the facts suggests that the differential treatment between Plaintiff and Nagi was due to his compliance with Defendants' wishes, not Plaintiff's exercise of her FMLA rights.

In short, there is scant evidence showing a causal connection between the

16

adverse employment action and Plaintiff's FMLA leave. But there is significant evidence that the School District Defendants took actions adverse to Defendant because of frustration with her performance and decision-making.

For these reasons, the Court finds that Plaintiff has failed to show causation and, accordingly, failed to establish a prima facie case of discrimination or retaliation under the FMLA. Count I must be dismissed as futile, as the Court finds it would not survive a 12(b)(6) motion to dismiss.

## B.    Count VIII – Violation of Title IX

Plaintiff asserts in Count VIII that the School District violated Title IX (20 U.S.C. § 1681(a)) by discriminating against her based on sex. ECF No. 68, PageID.1841 ¶ 156. Under Title IX, educational institutions that receive federal funding are prohibited from discriminating under any education program or activity on the basis of sex. *Chisholm v. St. Marys City Sch. Dist. Bd. of Educ.*, 947 F.3d 342, 349 (6th Cir. 2020) (citing 20 U.S.C.S. § 1681).

In support of her request to amend, Plaintiff offers only that her Title IX allegations effectively replace the Title VII allegations in the Original Complaint, which also claim sex discrimination. ECF No. 69, PageID.1875.[2] Plaintiff argues

---

[2] The Court notes that Plaintiff may not use its Proposed Amendment to "replace" its original Title VII cause of action with its Title IX claim. Though similar, the statutes prohibit different conduct and require different proof. *See Bose v. Bea*, 947 F.3d 983, 990 (6th Cir. 2020) ("Title IX imposed liability only for a funding recipient's 'own official decisions' and not 'for its employees' independent

that the School District cannot claim prejudice "because Plaintiff would like to pursue the same theory of liability under a different statute." *Id.* As it argued with respect to Plaintiff's FMLA allegations, the School District asserts in response that Plaintiff cannot maintain a claim under Title IX because she did not suffer an adverse employment action. ECF No. 72, PageID.2051.

To establish a Title IX prima face case of discrimination using indirect evidence, a plaintiff must show that she "(1) was a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position, and (4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Childers v. Casey Cty. Sch. Dist. Bd. of Educ.*, No. 1:21-CV-00138-GNS-HBB, 2023 U.S. Dist. LEXIS 124142, at *6 (W.D. Ky. July 19, 2023) (quoting *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)). If this burden is met, the employer must articulate a legitimate non-discriminatory reason for the adverse action. *Arendale*, 519 F.3d at 603. If the employer can make this showing, the burden shifts to the plaintiff to show that the proffered reason is pretextual. *Id.*

The parties do not dispute that Plaintiff is a member of a protected class and is qualified to be superintendent. Rather, as with Plaintiff's FMLA claims, the

---

actions.") (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). Thus, the Court must still analyze Plaintiff's proposed Title IX action pursuant to Federal Rule of Civil Procedure 15(a)(2).

School District contends that Plaintiff's claim fails because she did not suffer an adverse action. ECF No. 72, PageID.2051. However, as explained above, Plaintiff's Proposed Amendment sufficiently alleges that she suffered an adverse employment action when she was involuntarily placed on administrative leave pending a non-existent investigation. *See* discussion *supra* Part III(A)(i).

The causation element is again where Plaintiff's prima facie case fails. As explained with respect to her FMLA claim, she fails to show that she was treated differently than a similarly situated person outside of her protected class. *See* discussion *supra* Part III(A)(ii). For purposes of Title IX, a similarly situated person is someone of the opposite gender whose situation is "nearly identical" in "all relevant aspects." *Schaumleffel v. Muskingum Univ.*, No. 2:17-cv-463, 2018 U.S. Dist. LEXIS 36350, at *38 (S.D. Ohio Mar. 6, 2018) (quoting *Humenny v. Genex Corp.*, 390 F. 3d 901, 906 (6th Cir. 2004)). Plaintiff's comparators do not meet this standard.

To reiterate, Niczay is a white male who served as superintendent prior to Plaintiff and who involuntarily transferred teachers in 2018 without backlash from Defendants. *See* discussion *supra* Part III(A)(ii). However, the conditions under which Plaintiff and her comparator operated were vastly distinct given the fallout of COVID-19. Plaintiff served during the pandemic while Niczay did not. The variable conditions described in Part III(A)(ii) heightened the tension in the school district

and impacted the desires of the School District Defendants and the HFT. This easily explains why Plaintiff experienced a different response to similar actions. And again, Plaintiff identifies Nagi as a comparator because he was not placed on paid administrative leave during his investigation. ECF No. 68, PageID.1828 ¶ 82. As discussed in the previous section, their situations are not "nearly identical" because the two received different responses to different actions. Thus, Nagi is also not similarly situated.

For these reasons, Plaintiff fails to satisfy the causation element and, accordingly, fails to bring a prima facie case under Title IX. Count VIII must be dismissed as futile, as the Court finds it would not survive a 12(b)(6) motion to dismiss.

## C. Counts X and XIX – Conspiracy Claims

Plaintiff brings two different conspiracy claims in Counts X and XIX. In Count X, she alleges that all Defendants engaged in a conspiracy to deprive her of civil rights guaranteed by the Constitution. Specifically, the Proposed Amendment asserts that Defendants conspired "to deprive Mrs. Ahmed of her property interest in her employment contract" and "of her property interest in her reputation" in violation of 42 U.S.C. § 1985(3). ECF No. 68, PageID.1843–44 ¶¶ 173–174. As for Count XIX, she alleges that all Defendants except the School District engaged in a civil conspiracy to interfere with myriad rights guaranteed to her by her employment

contract, discrimination law, the FMLA, the Constitution. *Id.* at PageID.1857 ¶¶ 252–253.

### i.   Plaintiff's § 1985(3) Claim

Plaintiff argues that 42 U.S.C. § 1985(3) offers a remedy for her alleged injury because she is a member of a class protected by the Equal Protection Clause. She claims that  "because she is a woman, the School District Defendants and the HFT conspired against her and that, as a result, she was deprived of her property interest in her employment contract and reputation." ECF No. 69, PageID.1876.

Under the first clause of § 1985(3):

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). As the protections under this statute are distinct from those guaranteed by generic tort law, a proper action requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's actions." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971). In the Sixth Circuit, § 1985(3) "reaches only conspiracies targeting a person

based on a classification (like racial discrimination) that would receive heightened scrutiny under the Supreme Court's equal-protection framework." *Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th Cir. 2022). Thus, claims for gender discrimination also sound under the statute. *Thompson v. City of Memphis*, 86 F. App'x 96, 103 (6th Cir. 2004).

To state a conspiracy claim under § 1985(3), Plaintiff must show "(1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, and (3) an act in furtherance of the conspiracy, (4) which causes injury to a person or property, or a deprivation of any rights or privileges of a citizen of the United States." *Simmons v. Cty. of Wayne*, Civil Action No. 22-11953, 2023 U.S. Dist. LEXIS 186315, at *16-17 (E.D. Mich. Sep. 11, 2023) (citing *Johnson v. Hills & Dales Gen. Hos*p., 40 F.3d 837, 839 (6th Cir. 1994)). Moreover, Plaintiff must allege that the conspiracy was motivated by gender-based animus. *Id.* Conspiracy claims must be pled with some degree of specificity to be actionable. *Lloyd v. City of Streetsboro*, No. 18-3485, 2018 U.S. App. LEXIS 36090, at *19 (6th Cir. Dec. 20, 2018).

Defendants argue that the Proposed Amendment does not show that the alleged conspiracy was motivated by discriminatory animus and does not allege sufficient detail to show that a conspiracy ever existed. ECF No. 71, PageID.1910; ECF No. 72, PageID.2064. The Court agrees with Defendants and finds that Plaintiff

does not allege a valid conspiracy claim under § 1985(3).

She asserts that Mrs. Toni Coral, President of the HFT, misleadingly told the School Board Defendants that teachers were leaving for various reasons related to Plaintiff's leadership. ECF No. 68, PageID.1813 ¶ 38. Coral then allegedly notified HFT members via Facebook that she had been in contact with the School Board Defendants on their behalf. *Id.* at ¶ 39. At this point, where Plaintiff must show a conspiracy, her allegations break down. She claims that the HFT and the School Board Defendants "conspired and agreed, explicitly or implicitly, to force Mrs. Ahmed" to rectify Coral's complaints. *Id.* at ¶ 40. The School Board Defendants' alleged motivation for agreeing to this plot was that the group was "eager to maintain HFT's political and financial support." *Id.*

These allegations are not sufficient to show the formation of an unlawful conspiracy. To do so, Plaintiff must show "not only that the defendants share a common plan but that they share a 'common discriminatory objective.'" *Arsan v. Keller*, 784 F. App'x 900, 914 (6th Cir. 2019) (quoting *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 368 (6th Cir. 2012)). Plaintiff does not allege that Coral or any individual School Board Defendant agreed to deprive her of rights because of their mutual gender-based animus. In fact, Plaintiff alleges that the School Board Defendants had an entirely separate motive, which was to maintain support from the HFT. ECF No. 68, PageID.1815 ¶ 68. In contrast, there is no claim that any

Defendant took issue with Plaintiff's tenure because she is a woman.

Plaintiff also highlights the alleged disparate treatment between herself, Niczay, and Nagi to show that she endured sex-based discrimination. However, these allegations also fail to support her conspiracy claims. First, any decisions made by HFT or the School Board Defendants related to Niczay occurred in 2018, before the alleged conspiracy was formed, and thus have dubious connection to the conspiracy allegations here. Second, as explained above, Plaintiff has failed to establish that these men are valid comparators for the reasons explained *supra* in Parts III(A)(ii) and III(B).

Accordingly, Plaintiff's § 1985(3) claim fails, as she has not shown that the alleged overt acts were in furtherance of a conspiracy motivated by discriminatory animus. Count X must be dismissed as futile, as the Court finds it would not survive a 12(b)(6) motion to dismiss.

### ii.        Civil Conspiracy

The elements of a civil conspiracy are somewhat different. To plead a civil conspiracy under Michigan law, Plaintiff must allege "(1) a concerted action (2) by a combination of two or more persons (3) to accomplish an unlawful purpose (4) or a lawful purpose by unlawful means." *Levitt v. Bloem*, No. 343299, 2019 Mich. App. LEXIS 2395, at *19 (Ct. App. May 21, 2019) (citing *Admiral Ins Co v Columbia Casualty Ins Co*, 486 NW2d 351, 358–359 (1992)). A civil conspiracy claim requires

an underlying tort. *Id.* (citing *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 670 NW2d 569, 580 (2003)).

In paragraph 252 of the Proposed Amendment, Plaintiff alleges that:

> The School Board Defendants and the HFT combined to accomplish the unlawful purposes of: interfering with Mrs. Ahmed's contractual right to determine who would serve as central office administrators, interfering with her contractual right to work as Superintendent, and preventing her from involuntarily transferring teachers; illegally discriminating against her on the basis of disability and sex; illegally retaliating against her for advocating on behalf of disabled students, requesting and taking a reasonable accommodation, requesting and taking an FMLA leave, filing charges of discrimination and a civil action; and, illegally interfering with her property rights in violation of the Due Process Clauses of the federal and Michigan  constitutions and 42 U.S.C. § 1985(3).

ECF No. 68, PageID.1857 ¶ 252. Plaintiff continues to allege that "[e]ven assuming the purposes mentioned . . . are not unlawful, *per se*, the School Board Defendants and the HFT combined to violate Mrs. Ahmed's constitutional, statutory, and common law rights . . ." *Id.* at ¶ 253.

In response, the School Board Defendants argue that the Proposed Amendment is not sufficiently specific. They assert that Plaintiff fails to describe which School Board Defendants conspired in the alleged overt acts or how the alleged acts led to Plaintiff's deprivation of rights. ECF No. 72, PageID.2063. Further, the School Board Defendants assert that Plaintiff "offers no additional facts to make it plausible for this Court to infer the existence of a "single plan" or that

every named defendant shared in a common conspiratorial objective to engage in the alleged unlawful conduct." *Id.* For its part, the HFT also challenges the claim's specificity. They argue that Plaintiff fails to plead facts describing the alleged conspiracies formation, its purpose, and who from the HFT authorized the alleged overt acts. ECF No. 71, PageID.1916.

Having considered the above, the Court agrees that Plaintiff has failed to allege specific facts showing concerted action, which is necessary to maintain a civil conspiracy claim. Plaintiff claims that HFT and the School Board Defendants conspired to force her "to terminate Mrs. Imbrunone's employment with the School District; to negotiate retention bonuses for HFT members; to promote HFT members into administrative positions; to stop involuntary transfers; and, if Mrs. Ahmed refused to cooperate, to remove her from her position as School District Superintendent." ECF No. 68, PageID.1813. As proof that the parties were acting in concert, Plaintiff alleges that "[t]he School Board Defendants told Mrs. Ahmed they were working with the HFT . . ." *Id* at PageID.1815. Plaintiff then also lists myriad overt actions taken by the School Board Defendants in furtherance of the conspiracy. *See Id.* at PageID.1815 ¶¶ 41–42, 57–62, 69–70, 73 (demand that Imbrunone be fired, threaten to fire Plaintiff, solicit complaints about Imbrunone from school district staff, demand HFT members get administrative positions, publish a letter about Plaintiff's administrative leave, etc.)

26

The problem is that in every paragraph listed above Plaintiff identifies the entire set of School Board Defendants as individuals who agreed to the conspiracy and who acted in furtherance of the conspiracy.[3] She never identifies an individual Defendant. And Plaintiff does not explain to the Court how all five School Board Defendants formed the conspiracy or undertook the actions in furtherance thereof. For example, it is not clear whether someone authorized to act on behalf of each School Board Defendant undertook these actions or if each individual agreed to participate in the conspiracy. The Court is left wondering which School Board Defendant spoke to which member of the HFT to form the conspiracy? When? Which member threatened to have Plaintiff fired? How was this threat delivered?

If it is true that all five School Board Defendants undertook every action alleged in the Complaint, there is insufficient detail to support this conclusion. Were the entire groups' demands delivered by memorandum, did an agent speak on their behalf, or did each member travel together? The Court cannot discern whether the Defendants always acted in unison, which is implausible, or if Plaintiff, for lack of attention to detail, named the entire set of School Board Defendants when she could

---

[3] Toward the end of the Proposed Amendment, Plaintiff identifies Mr. Major as the individual who emailed her that she could not return to work and who spearheaded her performance evaluation upon her return. *See Id.* at PageID.1821 ¶¶ 64, 77, 79–80. However, other than Plaintiff's blanket statement that the email was in agreement with the HFT, it is unclear how these actions are related to the alleged conspiracy or taken in concert with the HFT at all.

have and should have been more specific. Conclusory allegations that the parties "conspired and agreed" are not enough to fill this gap. *Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 838 (E.D. Mich. 2010) (holding that conclusory allegations are not entitled to the general presumption of truth).

To be sure, Michigan law sometimes permits Plaintiffs alleging conspiracy to forgo naming individuals and to instead plead that an entire organization, such as a corporation, was a participant. *See Borsuk v. Wheeler*, 133 Mich. App. 403, 412, 349 N.W.2d 522, 526 (1984) ("The Supreme Court in *Jones v Martz & Meek Construction Co, Inc*, 362 Mich 451; 107 NW2d 802 (1961) held that it is sufficient to argue simply that a corporation was a part of the conspiracy without identifying the individuals within the organization who actually took part in the conspiracy."). However, even assuming this rule would apply here, Plaintiff does not name the entire School Board as a Defendant. Rather, five individual Defendants are named, raising meaningful concern that the School Board Defendants be properly held responsible for actions they took or for a conspiracy they, in fact, engaged in. As Plaintiff has named these individuals as Defendants, it is her responsibility to offer the available detail suggesting that they committed the acts alleged. But there is not one allegation that Defendants Hadwan, Obaid, Chowdury, or Watson did anything at all. Baldly lumping them together as School Board Defendants cannot show that they acted in concert with each other or with anyone from the HFT.

Further, it is not apparent that the requested detail is unavailable. Plaintiff alleges that the School Board Defendants demanded that she and Imbrunone be fired. If Plaintiff knows of the demand, she must be able to communicate how she knows. She alleges that several of the School Board Defendants entered the School District building and collected complaints about Imbrunone. Which Defendants? She alleges that the School Board Defendants "told [her] they were working with the HFT . . ." ECF No. 68, PageID.1815 ¶ 42. Again, it is not plausible that Plaintiff does not know who told her this.

Lastly, the conspiracy claims are betrayed by the fact that Plaintiff was reinstated into her employment by the School Board despite the protests of the HFT. ECF No. 68, PageID.1829 ¶¶ 84–87. The idea that these parties conspired to end Plaintiff's tenure is simply incongruous with their alleged disunity on her employment contract being renewed. *See Russell v. Citi*, No. 12-16-DLB-JGW, 2012 U.S. Dist. LEXIS 168471, at *9 (E.D. Ky. Nov. 28, 2012) ("When a plaintiff's argument is contradicted by the allegations in his own complaint, that argument is not entitled to a presumption of truth.") (citing *E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1306 (10th Cir. 2001)).

Ultimately, Plaintiff's civil conspiracy claim is wanting for detail and suffering from contradiction. As she cannot allege concerted action between the HFT and the School Board Defendants, her conspiracy claim fails. Count XIX must be

dismissed as futile, as the Court finds it would not survive a 12(b)(6) motion to dismiss.

### D.     Count XVIII – Invasion of Privacy/False Light

Lastly, the Proposed Amendment seeks to add a false light claim against the School Board Defendants and the HFT. False light is one species of Michigan's invasion of privacy laws, which include (1) intrusion upon a plaintiff's seclusion; (2) public disclosure of embarrassing private facts; (3) publicity placing the plaintiff in a false light in the public eye; (4) and the appropriation of the plaintiff's name or likeness for the defendant's advantage. *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 69 (2018).

To successfully maintain a false light claim, a plaintiff must show "that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." *Id.* (citation omitted). Further, a plaintiff must show that the defendant knew or acted in reckless disregard as to the falsity of the publicized information and the false light in which it would place the plaintiff. *Found. for Behavioral Res. v. W.E. Upjohn Unemployment Tr. Corp.*, 332 Mich. App. 406, 410 (2020) (citing *Id.*).

Plaintiff contends that these elements have been met. To support her claims

against HFT, she alleges that Coral, the union's President, made several false statements to the School Board Defendants blaming Plaintiff for teachers leaving the school district. ECF No. 68, PageID.1813 ¶ 38. She also alleges that various members of the HFT published to the Board of Education, the press, and the public false statements about how the school district was failing under Plaintiff's leadership. *Id.* at PageID.1816 ¶¶ 45–46, 71–72.[4] As for the School Board Defendants, Plaintiff claims that they caused the school district to publish to its staff the letter announcing that Plaintiff was being placed on paid administrative leave. *Id*. at PageID.1821–1822, ¶¶ 64-65.

Most of the allegations against Defendants fail to establish a false light claim for the same reason: lack of specificity. To support a false light claim under Michigan law, Plaintiff is expected to identify the contested statement and when it was made, explain why the statement is false, and name the speaker and listener. *Judkins v. HSBC Mortg. Servs.*, Civil Action No. 13-12357, 2014 U.S. Dist. LEXIS 40240, at *23 (E.D. Mich. Jan. 13, 2014). She repeatedly fails to meet this standard.

To start, Paragraph 45 of the Proposed Amendment alleges that HFT and its members published multiple objectionable statements about her conduct and

---

[4] HFT members allegedly stated that the School District was "backward" and "chaotic"; that Plaintiff's decisions were "inconsistent," "misguided," not in the students' best interests, and "exclusionary and completely disconnected from the needs of the School District"; that Plaintiff is a "liar"; that Plaintiff is responsible for teacher resignations that occurred around 2021 and 2022.

character. ECF No. 68, PageID.1816 ¶ 45. In paragraph 46, Plaintiff lists 20 HFT members and identifies them as the individuals who made the objectionable statements. Yet Plaintiff does not identify which speakers made which statements or when the statements were made. Further, she does not allege facts sufficient to show that the statements are false or misleading. She takes issue with being called inconsistent, exclusionary, and a liar, for example, but Plaintiff does not provide facts or context to show how these accusations misstate the truth. As for the School Board Defendants, Plaintiff never attributes an allegedly false statement to any individual, making her claims against them nonviable. With respect to both sets of Defendants, Plaintiff cannot maintain a false light claim if she cannot "offer any facts which would show that such statements were false or misleading . . . identify who made the statements, when the statements were made, or to whom they were made." *Judkins*, 2014 U.S. Dist. LEXIS 40240, at *23.

Further, the Proposed Amendment attributes several allegedly false statements to HFT President Coral, who allegedly blamed Plaintiff in the press and before the House Labor Committee for mass teacher frustration and resignations in the school district. *Id.* at PageID.1813, 1823–24 ¶¶ 38, 71–72. However, accepting that Coral's accusations are objectionable, Plaintiff cannot demonstrate actual malice. It appears to this Court that Plaintiff complains of Coral's public criticism of her professional decision-making, which Coral believed led to teachers leaving

the school district. Plaintiff does not contest that teachers left the school district in notable numbers, as alleged in paragraphs 29 and 30 of the Proposed Amendment, but she disagrees that her performance was to blame. This disagreement does not amount to a false light claim for multiple reasons.

First, even if Coral was speaking for all of HFT, Plaintiff has not shown that her statements were false. Plaintiff concedes in paragraph 36 that involuntary teacher transfers were a point of contention long before she became superintendent. *Id.* at PageID.1812 ¶ 34 ("Michigan teachers' unions, including AFT Michigan (of which the HFT is an affiliate) . . . took formal and informal opportunities to prevent public-school employers from exercising their right to involuntarily transfer teachers"). Thus, if Plaintiff involuntarily transferred teachers despite the practice being heavily opposed, there is sufficient reason to believe the transfers could have caused teachers to leave the school district. The same is true of Plaintiff's asserted failure to promote HFT members to administrative positions. Accordingly, she fails to allege that Coral's accusations were false or provable as such. *DuPuis v. City of Hamtramck*, 502 F. Supp. 2d 654, 658 (E.D. Mich. 2007) (extending to Michigan false light law the rule that "as long as the publication refers to a matter of public concern, it must be 'provable as false' before any liability may be accessed under a state defamation claim").

Second, even if Coral's statements were untrue, there is no evidence that they

were made with actual malice. Plaintiff does not offer evidence showing that Coral's statements were false at all. And as Coral was HFT President, she certainly spoke from personal knowledge, as the union had a long history of advocacy against involuntary transfers and for teacher promotions. ECF No. 68, PageID.1811–12 ¶¶ 34–36. And the allegedly untrue statements attributed to Coral echo the complaints Plaintiff says the union made prior to her FMLA leave. *Id.* at PageID.1813 ¶ 38. Thus, the allegations in the Proposed Amendment support the conclusion that Coral genuinely believed that Plaintiff's decisions caused unrest amongst the teachers in the HFT and in the school district. There is no evidence suggesting that Coral blamed Plaintiff for issues in the school district while knowing or recklessly disregarding that her statements could be false. *Jones v. Scripps Media, Inc.*, No. 16-cv-12647, 2017 U.S. Dist. LEXIS 50883, at *29 (E.D. Mich. Apr. 4, 2017).

Lastly, Plaintiff's allegations against former HFT President Michelle Cook must also be dismissed. She alleges that Cook testified at a House Labor Committee hearing that Plaintiff abused her and transferred her as a form of punishment. ECF No. 68, PageID.1823–24 ¶ 72. There are no facts in the Proposed Amendment discussing what Cook was referring to or why her allegations are supposedly false. The Court is left with Plaintiff's claim that "[t]hese statements were made with malice as . . . Mrs. Cook knew they were false or acted with reckless disregard as to whether they were false." ECF No. 68, PageID.1824 ¶ 72. But these bare legal

conclusions cannot carry the day.

For the foregoing reasons, Count XVIII must be dismissed as futile, as the Court finds it would not survive a 12(b)(6) motion to dismiss.

## IV.    CONCLUSION

As the new claims in the Proposed Amendment would not survive a 12(b)(6) motion to dismiss, Plaintiff's Motion for Leave to Amend (ECF No. 69) is **DENIED** as futile.

**IT IS SO ORDERED**.

Dated:  March 25, 2024                       /s/ Gershwin A. Drain
                                             GERSHWIN A. DRAIN
                                             U.S. DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 25, 2024, by electronic and/or ordinary mail.
/s/Lisa Bartlett
Case Manager